752 So.2d 1275 (2000)
PIRELLI ARMSTRONG TIRE CORPORATION, formerly known as The Armstrong Rubber Company, a foreign corporation, Appellant/Cross-Appellee,
v.
Meta E. JENSEN, as Personal Representative of Alwin H. Jensen, Deceased, and Matthew W. Jensen, a minor child, by and through his Guardian Meta E. Jensen, Appellees/Cross Appellants.
No. 97-04837.
District Court of Appeal of Florida, Second District.
March 15, 2000.
Wendy F. Lumish and Benjamin Reid of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Miami, for Appellant/Cross-Appellee.
Hugh N. Smith of Smith & Fuller, P.A., Tampa, for Appellees/Cross-Appellants.
PER CURIAM.
Pirelli Armstrong Tire Corporation [Pirelli] was sued for a catastrophic tire failure that resulted in the deaths of Mr. and Mrs. Alwin Jensen and injuries to their four-year-old son Matthew. This case was before us on appeal from the final judgment of liability and damages, which we affirmed. Pirelli Armstrong Tire Corp. v. Jensen, 688 So.2d 923 (Fla. 2d DCA 1997). Pirelli now challenges the assessment of attorneys' fees against it under section 768.79, Florida Statues (1993), the offer of judgment statute. It claims primarily that in this personal injury case a contingency risk multiplier cannot be used to calculate a reasonable fee in addition to the factors already enumerated in the statute.[1] We disagree with this suggested interpretation and affirm. In so doing, we align ourselves with the Fourth and Fifth Districts on this issue. See Collins v. Wilkins, 664 So.2d 14 (Fla. 4th DCA 1995), and Garrett v. Mohammed, 686 So.2d 629 (Fla. 5th DCA 1996), review denied, 697 So.2d 510 (Fla.1997).
The tragic accident that orphaned young Matthew Jensen took place on December 18, 1993. In April, 1994, the appellees commenced the underlying tort suit.[2] The *1276 complaint advanced alternative theories of manufacturing defect, design defect, inadequate warning, or absence of warning. In July, 1994, the appellees served a three million dollar demand for judgment pursuant to section 768.79. Although given an enlargement of time to respond, the demand expired without Pirelli accepting it. Trial began in February, 1995. The appellees abandoned the manufacturing defect theory based on reports from tire experts so the trial court entered a directed verdict on that claim. The trial court also entered a directed verdict on the inadequate warning claim. The case, therefore, went to the jury on the theories of design defect and absence of warnings. The jury found no design defect but found Pirelli negligent for failing to warn of dangerous propensities in the tire and awarded appellees $ 5,402,089.45.
The appellees moved to tax costs, investigative expenses, and attorneys' fees; preliminary hearings were held. The issue was put on hold until the appeal on liability was concluded when our mandate issued in March, 1997. More evidence was then presented to the trial court on the reasonableness of the fees and whether the contingency risk multiplier could be used in these circumstances. The trial court decided it was proper to apply the contingency risk multiplier and assessed fees in the following manner: it first calculated the lodestar figure at slightly over $ 414,000.00; it then applied a contingency risk multiplier of 2.5, thus increasing the amount to just over $ 1 million; it then reduced that amount by 25% based on certain criteria in section 768.79(7)(b); to this total of $ 777,675.95 it added prejudgment interest of $ 183,200.96. The final judgment on fees awarded the appellees $ 960,876.91.
Pirelli contends that applying the contingency risk multiplier in assessing fees under section 768.79 is error because the trial court must use only the criteria the statute lists. This is the same argument raised in Collins that the Fourth District rejected, as did the Fifth District in Garrett. We agree with Judge Warner's expressed reasoning in Collins. Section 768.79(7)(b) directs the trial court to consider, in determining the reasonableness of the fee, certain enumerated factors "along with all other relevant criteria" (emphasis ours). The statute also refers the trial court to the guidelines promulgated by the supreme court. See § 768.79(6)(a), (b). These guidelines include the Rules Regulating the Florida Bar, one of which, rule 4-1.5, fees for legal services, refers to whether or not the fee is fixed or contingent. See R. Regulating Fla. Bar 4-1.5(b)(8). Additionally, in setting a reasonable fee, rule 4-1.5(c) provides that all factors in this rule should be considered, "and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors." Thus, it is clear that the legislature authorized trial courts to consider and apply a contingency risk multiplier when awarding an attorneys' fee under section 768.79. See also Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 831 (Fla.1990). Inasmuch as the procedure is clearly outlined in the statute, we decline to construe it in a manner inconsistent with its directive, despite the fact that it enhances the award in such a generous manner. The trial court properly applied the statute as written.
Because we perceive this issue to be an important one for the administration of justice in this state, we certify the following question as one of great importance.
WHETHER THE APPLICATION OF A CONTINGENCY RISK MULTIPLIER TO AN AWARD OF ATTORNEY'S FEES UNDER SECTION 768.79, FLORIDA STATUTES (1993), THE OFFER OF JUDGMENT STATUTE, VIOLATE THE GUARANTEE OF EQUAL PROTECTION AFFORDED UNDER THE UNITED STATES OR FLORIDA CONSTITUTION?
Affirmed.
*1277 PATTERSON, C.J., and NORTHCUTT, J., Concur. CASANUEVA, J., Concurs in part and dissents in part with opinion.
CASANUEVA, Judge, Concurring in part and dissenting in part.
I concur with the majority opinion insofar as it affirms that the appellees were entitled to an attorneys' fee award and certifies the question as one of great importance. However, I dissent from that portion of the majority opinion that concludes section 768.79, Florida Statutes (1993), authorizes a multiplier when awarding attorneys' fees.
The majority properly notes that two sister courts have decided that section 768.79(6)(a) authorizes a trial court to apply a multiplier in awarding attorneys' fees under the offer of judgment statute. In Collins v. Wilkins, 664 So.2d 14 (Fla. 4th DCA 1995), and Garrett v. Mohammed, 686 So.2d 629 (Fla. 5th DCA 1996), the Fourth and Fifth Districts concluded that rule 4-1.5, Rules Regulating the Florida Bar, authorizes the multiplier's use. Thus, by referring to the fee for legal services rule, the Fourth, Fifth, and now the Second Districts assert that the legislature statutorily authorized trial courts to apply a contingency risk multiplier in determining a reasonable fee under section 768.79. Although, arguably, a reading of the fee factors promulgated by our supreme court could support this holding, for the following reasons I believe a different conclusion is warranted.
First, the use of a contingency risk multiplier in the context of section 768.79 violates the constitutional principle of equal protection of the law. Only one side in a civil action-the plaintiff-is eligible under a rule 4-1.5 analysis to receive a contingency risk multiplier because the plaintiff is taking the risk in commencing the action. From Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985), through Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403 (Fla.1999), awards of a multiplier have been approved, generally on the ground that an underlying statute encourages the bringing of a civil action. Such is not the case with section 768.79 because it encourages the terminating of litigation.
Equal protection analysis begins with the appropriate standard of review. Unlike statutes invoking racial classifications, for which constitutionality is measured under the strict scrutiny standard, here the lowest level of scrutiny applies-the rational basis standard. A legislative classification is valid unless it fails to "rationally further[] the purpose identified by the State." Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). A mere imperfect classification does not violate the equal protection clause. See Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Washington v. Confederated Bands and Tribes of Yakima Indian Nation, 439 U.S. 463, 501-502, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979). However, a classification must rationally relate to a legitimate state interest to be constitutional. See City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Haves v. City of Miami, 52 F.3d 918 (11th Cir.1995).
Both the legislative history and the judicial interpretation of section 768.79 suggest that its purpose is to encourage the resolution of litigation. In Eagleman v. Eagleman, 673 So.2d 946, 947 (Fla. 4th DCA 1996) (citations omitted), the Fourth District noted:
The spirit of the offer of judgment statute is to encourage litigants to resolve cases early to avoid incurring substantial amounts of court costs and attorney's fees. It serves as a penalty for parties who fail to act reasonably and in good faith in settling lawsuits.
The legislative history for chapter law 86-160 supports the Fourth District's conclusion. The staff analysis prepared by the Florida House of Representative's Committee on Judiciary for House Bill 321 stated that the proposed "legislation would provide sanctions for the unreasonable rejection of an offer of settlement given by *1278 either a defendant or plaintiff." Sanctions were to include attorneys' fees. The sanctions provided for by HB 321 would encourage settlement of civil cases which could, in turn, "result in lower litigation costs." Similarly, the Senate Staff Analysis and Economic Impact Statement prepared for Senate Bill 866 indicates the bill's purpose was to expand the offer of judgment concept "to encourage settlements between parties."
An unreasonable rejection of an offer of settlement made by either party pursuant to the proposed legislation would result in sanctions. The same purpose and intent identified in the staff analyses for SB 866 and HB 321 were included in CS/SB 866. The latter bill pointed out an additional benefit: increased out-of-court settlements should "reduce the fiscal impact of litigation on the court system."
This legislative commentary, albeit meager, powerfully manifests the purpose of section 768.79to reduce both litigation costs and demand on the state's judicial system by imposing sanctions, including attorneys' fees, on those parties who unreasonably reject an offer of settlement. Sanctioning a party defendant who unreasonably rejects an offer of settlement by applying a contingency risk multiplier, while prohibiting the sanctioning of a party plaintiff with the application of the same multiplier constitutes, in my mind, an equal protection violation. There is no underpinning in the legislative policy for the unequal application of section 768.79 nor is there a rational basis to sanction only party defendants with a multiplier. Such an application is both arbitrary and unreasonable. It is in no way relevant to the objectives of the legislation.
Furthermore, the multiplier's use in this manner cannot be justified by the rationale expressed in Rowe and its progeny. In Rowe and in Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), the supreme court upheld the statutory entitlement to an attorneys' fee and use of a multiplier on several public policy bases. Historically, such statutes discouraged meritless claims and operated to make the prevailing party whole. A multiplier also encouraged access to the courts and to competent attorneys by providing a financial incentive to bring meritorious litigation, particularly in areas where the legislature sought to encourage the private enforcement of public policy through litigation.
The public policy justifications do not apply to the function or purpose of section 768.79. The statute's purpose is to encourage resolution of pending litigation rather than encouraging access to the courts. The desired effect is to reduce the demand on the courts of this state.
The statutes at issue in Rowe and Quanstrom were fee shifting statutes, which mandate that the losing party pay the fees of the prevailing party rather than requiring each party to bear its own fees. See Kuhnlein v. Department of Revenue, 662 So.2d 309, 322 n. 3 (Fla.1995). In contrast, applying section 768.79 can cause even a prevailing party, should it reject a reasonable offer of judgment, to pay the losing party's costs, including attorneys' fees. Because it is neither by definition nor application a fee shifting statute, I cannot read section 768.79 as justifying the use of a contingent risk multiplier in this unrelated context.
Second, I conclude that the statutory language of section 768.79 does not expressly provide judicial authority to use a multiplier. Subsections (1) and (6) provide the relevant language for analysis: subsection (1) creates the entitlement to an attorneys' fee in any civil action for damages where either the plaintiff or defendant complies with the statute's formalities and obtains an award exceeding the statutory calculus. Subsection (6) directs a trial court to calculate an award of attorneys' fees in accordance with the factors promulgated by the supreme court.
In neither subsection does the statute expressly mention a multiplier. Without this express directive, the court lacks the authority to use a multiplier. In subsection *1279 (1), where it created the statutory entitlement to an attorneys' fee, the legislature defined and limited the award of fees to those incurred within a specified period. Fees are only awardable for services rendered between the date of filing an offer or demand that was subsequently rejected and the conclusion of the litigation. The rejected demand or offer, the legislature decreed, was admissible only to pursue the statute's penalty provisions. The fees for legal services performed during this period were to be calculated in accordance with supreme court guidelines. Rules 4-1.5(b) and (c) of the Rules Regulating the Florida Bar identify factors to be considered in determining a reasonable fee. Nowhere in rule 4-1.5 is there a specific mention of a multiplier. Attorneys' fees are authorized only by statute or by contract. Because a supreme court rule is neither, it cannot authorize a fee. It is the legislature's task to enact substantive law, see TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 611 (Fla.1995), and even though it created a substantive right to an attorneys' fee calculated between two points in time, it did not create a substantive right to have that fee multiplied.
In addition to providing for a penalty or sanction in subsection (7), the legislature specifically granted a trial court the authority to disallow the entitlement to attorneys' fees where it concluded the offer was not made in good faith. The interplay between the subsections evinces a clear legislative intent to penalize where appropriate and to provide a mechanism to deny a fee where the offer was not made in good faith. That same clarity of expression could have been used to authorize a multiplier but was not.
For these reasons, I conclude section 768.79 does not grant authority to a trial court to apply a contingency risk multiplier. I respectfully dissent.
NOTES
[1] Besides the application of the contingency risk multiplier to attorneys' fee awards under the offer of judgment statute, Pirelli also raises the following issues which we affirm without discussion: the trial court abused its discretion in finding that appellees had made their demand for judgment in good faith; if the trial court could apply the contingency risk multiplier, it was improperly applied to this case; the trial court abused its discretion in failing to award a reduced fee under the circumstances of this case; and the trial court erred in awarding prejudgment interest. In the cross-appeal, the appellees raise the issues of whether the trial court erred by judging the "then apparent merit or lack of merit in the claim" criterion in the statute from the wrong temporal perspective and whether the trial court erred in reducing the time expenditure amounts to arrive at the lodestar figure without the benefit of expert testimony. We also affirm the issues on the cross-appeal without discussion.
[2] A similar suit on behalf of Mrs. Jensen's estate was begun in federal court.