781 So.2d 1117 (2001)
INTERNAL MEDICINE SPECIALISTS, P.A., Appellant,
v.
Linda FIGUEROA, et al., Appellees.
No. 5D00-1279.
District Court of Appeal of Florida, Fifth District.
January 26, 2001.
Rehearing Denied April 10, 2001.
*1118 David R. Cassetty of O'Connor & Meyers, P.A., Coral Gables, for Appellant.
Elizabeth H. Faiella of Elizabeth H. Faiella, P.A., Winter Park and Marcia K. Lippincott of Marcia K. Lippincott, P.A., Lake Mary, for Appellees.
COBB, J.
In this case Linda and Melvin Figueroa, plaintiffs below, filed a medical malpractice action against the appellant, ultimately obtaining a verdict award of $807,500.00 which was more than 25% greater than a pretrial demand for judgment. Pursuant to a post trial motion, the trial judge awarded an attorney fee of $328,286.20 to plaintiffs based upon utilization of a multiplier of 2.0 on the basis that such was necessary in order for them to obtain competent counsel. The effect of the 2.0 multiplier was to award counsel an hourly fee of $550.00. The primary issue on appeal is the use of this multiplier.
The appellant argues that the trial court applied the multiplier without making any factual findings in regard to its propriety and in the absence of any evidence that the plaintiffs could not have obtained competent counsel absent the availability of a contingency risk multiplier. Indeed, argues the appellant, the plaintiffs did obtain competent counsel at a time when no such multiplier was available and she was the first attorney they approached regarding the case. While there was evidence of record that the attorney declined to take the case on an hourly rate basis, she was willing at the outset to take it on a contingency basis. No evidence was adduced to show that other attorneys were not available to the Figueroas on such a contingency basis with no multiplier available.[1]
The appellant cites to our opinion in Strahan v. Gauldin, 756 So.2d 158 (Fla. 5th DCA 2000). In that case we reversed the trial court which had utilized a 2.0 multiplier in a fee award arising out of an offer of judgment. We quote from Judge Peterson's opinion in that case:
We note that no evidence was presented that Gauldin's counsel could not have been retained but for a multiplier. See Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403 (Fla.1999) ("The importance of this policy consideration is highlighted by the fact that the very first factor listed in Quanstrom for courts to consider in determining if a multiplier should be utilized in tort and contract cases is whether the relevant market requires a contingency fee multiplier to obtain competent counsel.") Nor, perhaps, could there have been any such testimony, as Judge Schwartz suggests in a footnote to Gonzalez v. Veloso, 731 So.2d 63 (Fla. 3d DCA 1999):

Quarere: Whether any such showing can ever be made, and thus whether a multiplier is ever appropriate, when fees are awardable only when a reasonable offer is not accepted under § 768.79, an eventuality which obviously cannot be anticipated when counsel is obtained.
Gonzalez at 64, n. 2.
Gauldin retained his counsel before any promise of either a multiplier or a fee in excess of that which the ethical rules normally allow. The idea of the *1119 use of the multiplier was born in this case only after Strahan rejected a settlement offer of $50,000. The multiplier provides an incentive to a lawyer to represent a client in a case in which few lawyers would venture. The potential use of a multiplier in calculating a fee aids an injured person having a tenuous case to secure competent counsel and improves access to our system of justice. The United States Supreme Court has cautioned, however, that the use of a multiplier can also have the negative social cost of encouraging claimants with nonmeritorious claims. City of Burlington v. Dague, 505 U.S. 557, 563, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). We conclude that the multiplier was improperly applied in this case where there was an absence of any evidence indicating that a premium was necessary to obtain competent counsel.
The dissent herein suggests that our opinion in Strahan, concurred in by Judges Sharp and Harris, somehow makes a mockery of our previous holding in Garrett v. Mohammed, 686 So.2d 629 (Fla. 5th DCA 1996). It is clear, however, that if Garrett was correct in its determination that a contingency fee multiplier can be considered in an offer of judgment case, contrary to the footnoted implication in Gonzalez v. Veloso, 731 So.2d 63 (Fla. 3d DCA 1999), then the Strahan analysis logically follows. This is true for the simple reason that this court is not empowered, even in an en banc setting, to revise or recede from the opinion of the Florida Supreme Court in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla.1990). The Quanstrom opinion held that the first factor for a trial court to consider in determining whether a multiplier is necessary in setting a reasonable lodestar fee is "whether the relevant market requires a contingency fee multiplier to obtain competent counsel." See Quanstrom at 834. The Florida Supreme Court has not altered or receded from that holding.
The true alternative to the Strahan approach is not a revision of the criteria enumerated in Quanstrom, which is beyond our authority, but the adoption of the concurring and dissenting opinion of Judge Casanueva in Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275 (Fla. 2d DCA 2000), which would hold that an assessment of fees under section 768.79, Florida Statutes (1999), the offer of judgment statute, simply does not contemplate a contingency risk multiplier and to so interpret that statute renders it unconstitutional as a denial of equal protection of the law to parties defendant in civil litigation involving contingent fees. This issue has not been decided by the Florida Supreme Court. The adoption of Judge Casanueva's opinion by this court would entail an en banc recession from our prior opinions in Strahan and Garrett. It is clear, however, that the fee awarded in this case must be reversed under either approach, whether it be that of Judge Casanueva or that or our prior opinion in Strahan. There can be no legal basis to uphold the fee award as advocated by the dissent.
Based on Strahan, we vacate the attorney fee award in this case and remand to the trial court for the award of a reasonable fee without the use of a multiplier. We affirm the trial court in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ORFINGER, M., Senior Judge, concurs.
SHARP, W., J., dissents, with opinion.
SHARP, W., J., dissenting.
I would affirm the contingency fee multiplier factor in the attorney fee award to *1120 the Figueroas in their medical malpractice action, as well as the remainder of the fee award. In my view, the attorney for the Figueroas supplied a sufficient factual basis for the award and the trial judge made adequate findings to support the award.
We held in Garrett v. Mohammed, 686 So.2d 629 (Fla. 5th DC 1996) that a contingency fee multiplier could be appropriately considered in an offer of judgment case.[1] In that case we did not discuss what the proofs and proffers had to be in order to sustain a fee award with a contingency multiplier component.
However, in Strahan v. Gauldin, 756 So.2d 158 (Fla. 5th DCA 2000), we approached that issue when this court reversed a fee award based on an offer of judgment which contained a multiplier factor. We said that there was no evidence that Gauldin's attorney could not have been retained but for a multiplier. We did not elaborate concerning what evidence had been adduced. But we questioned whether there ever could be any such testimony proffered, in the offer of judgment award context, quoting Judge Schwartz' comment in Gonzalez v. Veloso, 731 So.2d 63 (Fla. 3d DCA 1999).
Quarere: Whether any such showing can ever be made, and thus whether a multiplier is ever appropriate, when fees are awardable only when a reasonable offer is not accepted under section 768.79, an eventuality which obviously cannot be anticipated when counsel is obtained.
Gonzalez, 731 So.2d at 64.
The majority opinion in this case is reversing the contingency fee multiplier factor of the fee award for the same stated reasons as we gave in Strahan. I think there has to be a better way. We should not continue to hold out contingency fee multiplier factors as possible under section 768.79, and then require attorneys to offer incredible or impossible proofs. This is unfair to the attorneys and makes a mockery of our holding in Garrett.
We have two choices. One is to recede from Garrett and sign on to Judge Casanueva's dissenting and concurring opinion in Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275 (Fla. 2d DCA 2000). That would require us to en banc this case. Another approach would be to readdress what is required by way of proof to sustain a multiplier award in section 768.79 cases.
In Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990), the Florida Supreme Court set forth the considerations a trial judge should take into account in determining a reasonable attorney's fee, "if the relevant market requires a contingency multiplier to obtain competent counsel." The court said additional factors to consider are whether the attorney was able to mitigate the risks of nonpayment in any way, and factors set forth in Rowe.[2] If the trial court determines success more likely than not at the outset of the case, it applies a multiplier of 1.0 to 1.5. If success is likely, the multiplier is 1.5 to 2.0; and if success is unlikely at the outset of the case, the court can use a multiplier of 2.0 to 2.5.
In this case, proofs were offered that when the Figueroas brought the case to their counsel, they were unable to pay her hourly rate of $250 per hour, and unable to pay any costs. She testified that in the Orlando-area legal market, this case would have to be accepted on a contingency fee basis. She also testified that she had to advance over $34,000 in costs and received *1121 no pay for her work over a two-year period. She testified there was no way to mitigate the risk of non-payment of her fees and her costs.
The attorney testified she took the case because she thought her client had strong credibility. However, she initially evaluated the case as unlikely to succeed for two reasons: her client appeared to be in good health, although the malpractice issue was whether she was at substantial risk for recurring colon cancer, and there was documentation in the file that the client had been warned about an abnormal blood test result, which she should have acted upon. The attorney also testified about the difficulty of prevailing in a medical malpractice case (in general 80% of plaintiffs lose), and how the tendency of juries is to believe the doctors over the alleged victims. She also testified that if the Figueroas had been able to pay an hourly rate, because of the difficulties of the case she would not have accepted it for less than $500 or more per hour, or twice (or more) her normal hourly rate.
Affidavits of two experienced trial attorneys were also presented to the court. They touched on all of the factors mentioned in Quanstrom and Rowe. Both attorneys said they considered whether the relevant Orlando area legal market requires a contingency fee multiplier to obtain counsel in this case and whether the attorney was able to mitigate the risk of non-payment in any way. One said that for this case, an appropriate multiplier would be 2.5; the other proposed 2.25.
Appellants argue that this case was likely to succeed, pointing to the fact that the first offer made under the offer of judgment statute was for $500,000. However, the attorney for the Figueroas testified that it was only after she accepted the case and had done considerable discovery that she learned the documentation in the file indicating her client had been put on notice of an abnormal blood test was either false or inaccurate. At that point, the outcome for her client was considerably more rosy. But that is not the critical time Quanstrom addresses for making the likliness, vel non, of success determination.[3] The critical ascertainment time for Quanstrom is when the attorney initially accepts and evaluates the case for purposes of making a fee arrangement with the client. Not sometime down the road, after discovery or other misadventure has altered the judicial landscape.
The order entered by the trial judge concerning the fee award stated that he had considered all of the factors set forth in Rowe and Quanstrom, as well as those enumerated in section 768.79. Specifically, he stated he had considered whether the relevant Florida market (Orlando), requires a contingency fee multiplier in order to obtain competent counsel and whether the attorney in this case was able to mitigate risk of non-payment in any way. He found that success in this case was not likely at the outset, and that a multiplier of 2.0 was appropriate. Implicit in this court's award of fees containing a multiplier are its findings that the relevant legal market requires fees be calculated similarly in like cases to obtain competent counsel, and that the attorney had no alternative method of mitigating her risk of non-payment.
In my view, there was a sufficient basis set forth in this case to support the court's award of fees, which includes a contingency fee multiplier, if such multiplier components *1122 are to be allowed in offer of judgment cases. I am not sure what more could be established to sustain the multiplier pursuant to Strahan. In my view, however, Quanstrom should only require a plaintiff to establish he or she could not have obtained competent counsel in the relevant legal market without a contingency fee arrangement, and that in undertaking the representation, the attorney was unavoidably at risk of non-payment of fees and advanced costs. The rationale of Quanstrom is basically:
We find that the multiplier is still a useful tool which can assist trial courts in determining a reasonable fee in this category of cases [torts and contract cases] when a risk of nonpayment is established.
Quanstrom, 555 So.2d at 834.
NOTES
[1] It stretches credulity to believe that the Figueroas would have had difficulty obtaining quality counsel in a case which their experienced trial counsel evaluated as warranting a settlement demand of $500,000.00.
[1] § 768.79, Fla. Stat.
[2] Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985).
[3] I also question the propriety of this court's overturning the trial court's finding of fact on its likeliness of success determination, because this court thinks the attorney's testimony was incredulous.