820 So.2d 967 (2002)
ISLAND HOPPERS, LTD., Appellant,
v.
Norma Beard KEITH, Personal Representative for the Estate of Marsha K. Beard, Appellee.
No. 4D01-143.
District Court of Appeal of Florida, Fourth District.
May 29, 2002.
Rehearing Denied June 27, 2002.
*969 Steven G. Schwartz of Schwartz & Horwitz, P.A., Boca Raton, for appellant.
Newton Patrick Porter, Tony Korvick of Porter & Korvick, Miami, and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellee.
POLEN, C.J.
Island Hoppers, Ltd. timely appeals the circuit court's Final Judgment awarding attorneys fees in favor of Tony Korvick and Newt Porter, Esqs., trial counsel for Appellee Norma Beard Keith. This appeal solely concerns the determination of the size of an attorneys' fees award to which entitlement had already been established and affirmed. Island Hoppers, Ltd. v. Register, 751 So.2d 590 (Fla. 4th DCA 1999).
Since our decision in the prior appeal arising from this litigation was by way of Per Curiam Affirmance, we briefly address the underlying facts of this litigation in order to provide the proper factual context to the instant opinion. In May of 1995, Norma Beard Keith, as personal representative of the Estate of Marsha Beard ("Beard"), instituted a wrongful death claim against Island Hoppers. The lawsuit primarily alleged Island Hoppers, a dive operator, had provided "negligent dive supervision" while Beard was on one of their sponsored dive charters. Liability was alleged on behalf of Island Hoppers both in its direct capacity, and vicariously, on behalf of two of its employees, party codefendant dive instructors. In August of 1996, Beard's estate filed three demands for judgment, pursuant to Florida Statutes 768.79, against Island Hoppers and the two dive instructors, of one million dollars each, for a total of three million dollars, which were all rejected. Three new demands for judgment were filed on December 22, 1997, seeking $400,000 from each party, for a total of $1.2 million dollars, *970 which were also rejected. The case proceeded to trial in March of 1998.
The jury ultimately returned a verdict in favor of Beard's estate, resulting in a $609,004.50 judgment against Island Hoppers. The Estate moved for its attorneys' fees pursuant to section 768.79.[1] The court held the Estate's recovery was more than 25% greater than the $400,000 demand which Island Hoppers had rejected in December 1997, and awarded the Estate its reasonable attorneys' fees, accruing from December 22, 1997 through the Final Judgment. Island Hoppers appealed the judgment and the attorneys' fees award, both of which were per curiam affirmed by this court. Island Hoppers, 751 So.2d 590.
A hearing was held in the circuit court, Judge Brown presiding, to determine the amount of the attorneys' fees award to which the Estate's entitlement had already been established. Trial counsel for the Estate, Korvick and Porter, testified on their own behalf regarding their experience, the nature of the underlying litigation, and the hours and rate they were claiming, by way of testimony and sworn affidavit. They also offered the deposition of Attorney Jeffrey Liggio as an expert fees witness. Liggio primarily opined that the fees sought seemed reasonable, and nothing seemed "out of line." He also opined a risk factor multiplier in the range of 2.25 to 2.5 should be applied to the fee award, as provided under Rowe, Quanstrom, and Bell.[2] Island Hoppers offered the testimony of its own expert, Attorney Fred Fulmer, who opined the hourly rate and number of hours sought were excessive. He also opined a multiplier should not be applied to the fee award, since he believed it would not have been difficult to obtain counsel, where there were so many "personal injury attorneys" in the area.
In its detailed Final Judgment, the court found the hours sought by both attorneys were reasonable, and set Korvick's hourly rate at $300 an hour, and Porter's hourly rate at $250 an hour. This resulted in a lodestar fee award (hours sought × hourly rate to be applied) of $210,850, for the applicable time period. The court also held a contingency risk multiplier of 2.3 should be applied due to a variety of factors which had made success unlikely at the outset. The multiplied fee award equaled $484,955, plus prejudgment interest accruing from the date of the Final Judgment in the underlying litigation.
Island Hoppers raises two points in this appeal which we address in this opinion. First, Island Hoppers contends the trial court erred in admitting the deposition testimony of appellee's only expert fees witness, Liggio, and hence its fee claim lacked the essential element of supportive expert testimony. An award of attorneys' fees must be supported by competent substantial evidence. See Cohen v. Cohen, 400 So.2d 463 (Fla. 4th DCA 1981). In this regard, Florida courts have required testimony by the attorney performing the services (for which the fees are sought) and testimony by an expert fees witness as to the value of those services. See Cohen, 400 So.2d at 465; Markham v. *971 Markham, 485 So.2d 1299, 1301 n. 8 (Fla. 5th DCA 1986); Brake v. Murphy, 736 So.2d 745, 747-49 (Fla. 3d DCA 1999); Fitzgerald v. State, 756 So.2d 110, 111-12 (Fla. 2d DCA 1999).
At his deposition, Liggio admitted he had spent a scant three hours of preparation in forming his opinion regarding the reasonableness of the fees sought by Korvick and Porter. He further admitted Korvick and Porter had dropped off twenty (20) boxes of litigation materials for his perusal; he reviewed absolutely none of those materials. He stated in forming his opinion he had reviewed the following materials: a jury reporter verdict blurb, the motion for fees and the attached affidavits, the fee contract between Korvick, Porter, and the Estate, closing arguments and opening statements from trial, and the appellate briefs from the prior appeal on the merits. He also stated he had discussed the case with Korvick and Porter, and that he had some experience, albeit limited, with Korvick and Porter, and had discussed their reputations with other lawyers in the community. Island Hoppers argued below, and on this appeal, that this is simply not enough, that Liggio's underlying factual predicate is so lacking that his opinions should not have been entertained by the court.
We begin our analysis by recognizing that allegations that an expert witness lacked a sufficient factual predicate to form an opinion, go to the weight to be given to the evidence (the expert's opinion) rather than its admissibility. See Nat Harrison Assocs., Inc. v. Byrd, 256 So.2d 50 (Fla. 4th DCA 1971). As such, a trial court's determination of the competency of expert testimony will not be disturbed on appeal absent a clear abuse of discretion. Gershanik v. Dept. of Prof'l Regulation, Bd. of Med. Examiners, 458 So.2d 302 (Fla. 3d DCA 1984). Using this highly deferential standard on review, we find no error in the trial court's exercise of its discretion.
When this issue was raised at the fee hearing, the court took a recess to provide itself an opportunity to personally review Liggio's deposition. The court found Liggio was very familiar with the numerous issues involved in the underlying case, and thus allowed the admission of his deposition as supportive expert testimony. Although we find no abuse of discretion in the lower court's admission of Liggio's opinion, we note the better practice would have been for Plaintiff/Appellee Estate to present an expert fees witness who was notably more familiar with the actual litigation files themselves. Although Liggio was knowledgeable of the issues involved in the underlying litigation, and his own expertise was readily apparent, having been inter alia, President of the Florida Academy of Trial Lawyers (1998-1999), he readily admitted his general lack of familiarity with any of the actual litigation files or materials contained therein, which constituted the basis for the fees sought. This is a murky area where few courts have spoken with a clear voice. Clearly every case is to some degree factually unique, and we can maintain no steadfast black-letter rule which shall control in all situations. Still, we maintain there is a spectrum involved, reflecting various degrees of familiarity with the factual predicate which reflect basic standards of diligence and reasonableness. Liggio's factual predicate in the instant case tends towards the lower end of the spectrum of what this court considers reasonable and acceptable. Nonetheless, where the sufficiency of Liggio's factual predicate went to the weight to be accorded to his expert opinion, we hold the trial court did not abuse its discretion in considering his opinion in reaching its determination *972 of what constituted a reasonable fee.
Notwithstanding the foregoing, we question whether in the words of the preeminent playwright, this is all "much ado about nothing." Though Florida courts have long required the corroborative testimony of an expert "fees witness," we question whether the rule is always the best, or most judicious, practice. We note this practice has existed since at least the 1960s. See, e.g., Lyle v. Lyle, 167 So.2d 256 (Fla. 2d DCA 1964). Yet, we note as our profession matures and evolves, as it has over the past forty years, and continues to do so, our trial judges have become highly experienced in all aspects of litigation, often with knowledge equal to, or in some cases far superior to, that of those attorneys who are called upon to provide expert testimony as a "fees witness." Our trial judges see attorneys representing all levels of skill and experience in their courtroom; it is not uncommon for a trial judge to conduct multiple fee hearings practically every week. At the most basic level, we fail to see what, if any, "guidance" these "fees experts" actually provide to the well-versed trial judges of this state, who ultimately have the responsibility to determine, in their relatively unfettered discretion, whether the hours sought are reasonable, and what hourly fee(s) should be applied. Looking at the instant case, surely Judge Brown, who presided over both the trial and the ensuing fee hearing, had considerably more familiarity with the litigation, both the complexity of the issues involved and the skill exercised by trial counsel, than Attorney Liggio, who merely spent three hours reviewing secondary sources and engaged in limited and rather brief conversation with trial counsel. Furthermore, our appellate courts have been quick to reverse patently outrageous fee awards, inherently disregarding the corroborative testimony of the "fees experts" as, for all intents and purposes, worthless. See, e.g., Ziontz v. Ocean Trail Unit Owners Ass'n, Inc., 663 So.2d 1334 (Fla. 4th DCA 1993)(finding $60,000 in fees awarded in connection with litigation regarding an outstanding one hundred ($100) dollar assessment was manifestly unjust); see also Gen. Motors Acceptance Corp. v. Laesser, 791 So.2d 517, 520-22 (Fla. 4th DCA 2001) (Owen, S.J., dissenting) (noting the mere existence in the record of expert opinion testimony supporting the trial court's finding of reasonableness of time expended or the fee awarded does not require the reviewing court to abandon its own expertise or common sense in evaluating the reasonableness of the award, and that "even the least experienced in the art of seeking fee awards will have an expert opine that the time spent by the attorney was reasonable").
We recognize expert opinion may play some role in assisting the court in determining the propriety of using a contingency multiplier, discussed, infra; the multiplier determination rests upon the necessity of such in the market and many judges, both trial and appellate, who have spent a number of years on the bench may be somewhat unfamiliar with the current state of the market, i.e., what factors influence the current calculus regarding the decision of counsel to undertake representation. The opinion of an expert as to the current status of the market in this regard may provide some assistance to the judge who must ultimately determine what the market does in fact require, especially since the testimony of counsel seeking the multiplier, regarding the necessity of that multiplier, may be entirely self-serving. We distinguish the more fundamental issues of appropriate hours expended by counsel, and the rates to be applied, issues where the experience garnered from sitting on the bench and *973 presiding over the gamut of the legal profession affords the trial judge greater insight, and a greater understanding, of what constitutes "reasonable."
We are unpersuaded by Island Hoppers's contention that the hours awarded, and hourly rates to be applied, were excessive, and find no abuse of discretion in the trial court's determinations in those regards. Island Hoppers further contends the trial court erred in applying a contingency risk multiplier to the "lodestar" fee award, especially where the attorneys' fees in question were only recoverable pursuant to section 768.79. Due to recent conflict among our sister courts, we write to address this issue, which we maintain to be of great public importance.
In Rowe, our supreme court adopted the federal "lodestar approach" for determining reasonable attorneys' fees for award purposes. The first step in the lodestar process is to determine a reasonable number of hours to be awarded, multiplied by a reasonable hourly rate, the product of which constitutes the "lodestar" amount. Rowe, 472 So.2d at 1150. After calculating the "lodestar," the court may add or subtract from the lodestar amount based upon a "contingency risk" factor. Id. at 1151. Ergo, the court adopted a contingency risk multiplier, whereby the lodestar could be multiplied on a sliding scale, from 1.5 to 3, based on the relative likelihood of success at the outset of the representation. Id. Rowe was subsequently refined by Quanstrom, where the maximum multiplier was reduced from 3 to 2.5, and the court distinguished three general categories of cases in relation to attorneys' fees, discussing the propriety of utilizing multipliers in conjunction with each category. Pertinent to the instant case, the court provided, in tort and contract cases, the trial court is to consider the following factors in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement [contingent or fixed] between the attorney and his client. Quanstrom, 555 So.2d at 834.
This court addressed the applicability of a contingency risk multiplier in the offer of judgment context in Collins v. Wilkins, 664 So.2d 14 (Fla. 4th DCA 1995). In doing so, we looked to the language of the offer of judgment statute, to see if it provided for the application of a contingency risk multiplier in determining a reasonable fee to be awarded under that particular statutory provision. The controlling statute provided, "When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors ...". § 768.79(7)(b), Fla. Stat. (1993) [3](as discussed in Collins). We further noted the statute referred the court to the guidelines promulgated by the supreme court in determining a reasonable fee. See § 768.79(6)(a),(b), Fla. Stat. (1993). Looking at the Rules of Professional Conduct, Rule 4-1.5, Fees for Legal Services, we *974 noted one of the factors to be considered in determining a reasonable fee was whether or not the fee was fixed or contingent. Rule 4-1.5(b)(8). Furthermore, the rule specified that all factors should be considered in setting a reasonable fee, "and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors." Rule 4-1.5(c). Therefore, we concluded that the legislature had authorized a trial court to consider the application of a contingency risk factor as one criterion which may be applied in determining a reasonable fee under section 768.79. Collins, 664 So.2d at 15.
Thereafter, a split has arisen among the Districts regarding the propriety of utilizing a contingency risk factor in determining a reasonable fee under section 768.79. In Gonzalez v. Veloso, 731 So.2d 63 (Fla. 3d DCA 1999), Chief Judge Schwartz questioned whether the showing required by Quanstrom could ever be satisfied in a 768.79 context.
"Quaere: Whether any such showing can ever be made, and thus whether a multiplier is ever appropriate, when fees are awardable only when a reasonable offer is not accepted under section 768.79, an eventuality which obviously cannot be anticipated when counsel is obtained." Id. at 64.
Subsequent to Gonzalez, some courts began to shy away from the application of multipliers in the section 768.79 context, primarily on the grounds the parties seeking fees had failed to prove the necessary factual predicated established in Quanstrom, i.e., that the attorney representing the party who made the offer of judgment would not have taken the case, nor would any other competent attorney in that legal community, without the availability of the multiplier. See, e.g., Strahan v. Gauldin, 756 So.2d 158 (Fla. 5th DCA 2000); Internal Medicine Specialists, P.A. v. Figueroa, 781 So.2d 1117 (Fla. 5th DCA 2001). Then, in December of 2001, in an en banc opinion, the Fifth District expressly held trial courts were without legal authority to utilize a contingency multiplier in conjunction with a section 768.79 fee award. Allstate Insurance Co. v. Sarkis, 809 So.2d 6 (Fla. 5th DCA 2001) (abrogating Garrett v. Mohammed, 686 So.2d 629 (Fla. 5th DCA 1996); Strahan; Internal Medicine Specialists).
In Sarkis, the court recognized the plaintiff had made a strong factual showing to support the award of a multiplier under its previous case law. However, the court held multipliers were no longer legally applicable where fees were sought under section 768.79, cursorily adopting the view of Judge Casanueva dissenting in Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275 (Fla. 2d DCA 2000)(Casanueva, J., concurring in part and dissenting in part), rev. dismissed, 777 So.2d 973 (Fla.2001), that neither (1) Quanstrom nor (2) section 768.79 authorized the used of contingency risk multipliers in calculating attorney's fees awarded under the offer of judgment statute. Upon due consideration, we respectfully disagree and follow our prior holding in Collins.
As discussed, supra, in Collins, upon due inspection of the statutory language of section 768.79, and the relevant rules promulgated by our supreme court, which the statute itself expressly reference, we held the legislature, via section 768.79, had authorized trial courts to consider the application of a contingency risk factor as a criterion in determining a reasonable fee under the offer of judgment statute. See Collins, 664 So.2d at 15. We see no reason to recede from our prior holding, especially where Judge Casanueva expressly admits in his dissenting opinion, "[B]y referring to the fee for legal services *975 rule, the Fourth ... assert[s] that the legislature statutorily authorized trial courts to apply a contingency risk multiplier in determining a reasonable fee under section 768.79 ....arguably, a reading of the fee factors promulgated by our supreme court could support this holding...." Pirelli Armstrong, 752 So.2d at 1277. Thus, we maintain trial courts are legally authorized (by the legislature) to consider application of a contingency risk multiplier under the offer of judgment statute.
Furthermore, we find no logical inconsistency in application of the Quanstrom factual requirements in the offer of judgment context. We recognize whenever a potential client walks through an attorney's door for the first time, a wide array of factors enter the calculus as to whether or not counsel will in fact decide to undertake that representation. Rowe and Quanstrom recognized potential clients whose cases seem to have a relatively low likelihood of success at the outset, may face considerable difficulties in securing counsel, and may often be unable to afford competent counsel. As such, the multiplier was established, to serve as an incentive of sorts, for attorneys to undertake representation where a risk of nonpayment was established. Although an attorney contemplating representation of a particular client can never "know" for certain whether or not entitlement to a fee award under 768.79 will ultimately be established, surely skilled counsel can, contrary to the words of Chief Judge Schwartz in Gonzalez, "anticipate" such. Offers of judgment, as well as requests to apply multipliers, have clearly become part and parcel of litigation in the state of Florida; this court need only look at any monthly docket to recognize such. We find no inconsistency in holding competent counsel can "anticipate" the eventual filing of a 768.79 offer of judgment, "anticipate" the possible entitlement to fees if the statutory prerequisites are met, and "anticipate" the possibility said fee award will be multiplied.[4] Accordingly, we find no logical inconsistency in application of the Quanstrom requirements to the offer of judgment context, and move to consider the application of said requirements to the instant case.
We find no error in the trial court's application of a contingency risk multiplier to the instant case. Significant testimony reflected, and the trial court found, success was "unlikely" at the outset for Beard's estate, in accordance with a multiplier ranging from 2.0 to 2.5 under Quanstrom. Id. at 834. Counsel for the Estate had no means of mitigating the risk of non-payment in this cases where their fees were entirely contingent, and both Korvick and Porter testified they would not have undertaken the representation absent the possibility of a multiplied fee award. Even Liggio, "fees expert" for the Estate, opined a multiplier was required to obtain competent counsel in the relevant market. Relying on the foregoing testimony and her thorough understanding of the underlying litigation (over which she had presided), Judge Brown recited numerous factors which had in fact made success "unlikely at the outset," namely that the decendent's negligence may have contributed to her own death, the medical examiner had been unable to determine the cause of the accidental drowning, the *976 decedent may have had a pre-existing heart condition which may have contributed to sudden cardiac death, issues of nonparty fault, and the fact that no certified diver had previously won a verdict based upon negligent supervision of a PADI certified diver. Thus, we hold the trial court did not abuse its discretion in determining a multiplier of 2.3 was warranted in the instant case.
We recognize both the First and Second Districts have recently upheld the legal validity of application of a multiplier in conjunction with a fee award under section 768.79. See Lewis v. Bondy, 752 So.2d 1225 (Fla. 1st DCA 2000); Pirelli Armstrong, 752 So.2d 1275 (Fla. 2d DCA 2000); see also Allstate Insurance Co. v. Materials, 787 So.2d 173 (Fla. 2d DCA 2001)(holding multiplier was not applicable to section 768.79 award because plaintiff failed to introduce any evidence establishing the factual proof required by Quanstrom). We certify conflict with Allstate Insurance Co. v. Sarkis, 809 So.2d 6 (Fla. 5th DCA 2001).
AFFIRMED.
STONE, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J. concurring specially.
I concur with the result of the majority opinion and write separately to emphasize that the rule requiring an independent "expert" in every attorney's fee case rests on shaky theoretical grounds.
This court has often held that an award of attorney's fees must be "substantiated" by expert testimony in addition to that of the lawyer claiming the fee. See Tanner v. Tanner, 391 So.2d 305, 305 (Fla. 4th DCA 1980); Mullane v. Lorenz, 372 So.2d 168, 168 (Fla. 4th DCA 1979); Lamar v. Lamar, 323 So.2d 43, 44 (Fla. 4th DCA 1975).
Examination of these cases reveals that the rule requiring the testimony of an independent expert traces back to Lyle v. Lyle, 167 So.2d 256 (Fla. 2d DCA 1964). In support of the rule announced, Lyle cited no authority; the court justified the rule as a matter of public policy. Lyle referred to the "elementary rule of evidence" that "the value of personal services is proven by expert witnesses." Id. at 257. Then, to explain why the lawyer seeking fees could not qualify as his own expert, the second district observed that "the selfserving nature of the testimony given by the attorney who performs the services precludes the court from making an award based solely on his testimony." Id. The court did not explain why, unlike other evidentiary issues, a finder of fact could not take the "self-serving nature of the testimony" into consideration in determining the fee award. In my view, this rationale for requiring expert testimony in all attorney's fee cases ignores the basic precept of our adversary system that the credibility of testimony is best resolved by the finder of fact.
A later case justified the rule in terms of lawyers' public relations:
Implicit in the rule that an attorney's fee must always be proved through the presentation of testimony is that such a requirement is necessary to maintain the image of lawyers in the eyes of the public.
Lafferty v. Lafferty, 413 So.2d 170, 171 (Fla. 2d DCA 1982). Whatever the rule requiring an independent expert has contributed to the image of lawyers, I suspect it is not so great so as to preclude modification of the rule to be more in accord with the current reality.
Since the 1964 decision in Lyle, courts have been called upon to set attorney's *977 fees in a variety of settings. The earlier cases seem largely confined to domestic relations, an area engendering strong feelings among the litigants. In this context, the requirement of an expert on attorney's fees insulated a trial court from criticism by providing an objective basis for an award that otherwise might have been perceived by the losing party as one more dose of punishment.
Statutes such as sections 57.105 and 768.79, Florida Statutes (2001), have expanded the situations in which courts are called upon to award attorney's fees. Attorney's fees is the single most litigated issue in civil courts. As a result, trial courts are adept at handling this issue. After six months on the civil bench, a judge has heard enough testimony to qualify as an expert on the reasonable value of legal fees in his or her community. The trial judge has also had the benefit of observing the legal work first hand in the case in which fees are sought.
Recognizing the expertise of trial judges in this area, we have held that a "trial court was not bound by the testimony of [an] expert as to the amount of a reasonable attorney's fee, even though there was no opposing expert." Baldwin Piano & Organ Co. v. Dote, 740 So.2d 1230, 1231 (Fla. 4th DCA 1999). How important can it be that an award of attorney's fees has been "substantiated" by expert testimony in addition to that of the lawyer claiming the fee, if the judge is free to disregard that testimony?
If a trial court is not bound by an attorney's expert testimony, then the judge's discretion on whether to admit such testimony must necessarily be very broad. I agree with the majority that there was no abuse of discretion in the trial court allowing attorney Jeffrey Liggio to testify.
I also agree with the majority that a hard and fast rule requiring the testimony of an expert in every case is unnecessary. Each party should decide for itself whether securing the testimony of an outside expert will allow it to present a better case.
NOTES
[1] See § 768.79(6)(b), Fla. Stat. (1990)("If a plaintiff serves an offer which is not accepted by the defendant, and if the judgment obtained by the plaintiff is at least 25 percent more than the amount of the offer, the plaintiff shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served.").
[2] Fla. Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985); Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990); Bell v. U.S.B. Acquisition Co., 734 So.2d 403 (Fla.1999).
[3] The controlling version of the statute in the instant case contained the exact same language as that examined in Collins. The instant underlying suit was instituted in 1995; section 768.79 was not amended from 1990 until 1997. See Metropolitan Dade County v. Jones Boatyard, Inc., 611 So.2d 512 (Fla. 1993)(an award of attorney's fees pursuant to the offer of judgment statute is controlled by the version of the statute in effect when the cause of action arose).
[4] We recognize an inconsistency has arisen in this regard due to the split among the Districts. For example, counsel practicing in this District could "anticipate" entitlement to a multiplied fee award (pursuant to section 768.79), whereas counsel practicing in the Fifth could not reasonably "anticipate" such. As such, we recognize the need to certify the existent conflict in hopes of obtaining statewide consistency.