838 So.2d 1198 (2003)
Deanna DOYLE-VALLERY, M.D.; Deanna Doyle-Vallery, M.D., P.A.; and Corcoran, Easterling & Doyle-Vallery, Ltd., Appellants,
v.
Julie B. ARANIBAR and Richard Aranibar, M.D., Husband and Wife, Appellees.
No. 2D02-2311.
District Court of Appeal of Florida, Second District.
January 31, 2003.
Richard R. Garland of Dickinson & Gibbons, P.A., Sarasota, for Appellants.
Theodore C. Eastmoore, Patricia D. Crauwels, and Alan W. Roddy of Matthews, Eastmoore, Hardy, Crauwels & Garcia, Sarasota, for Appellees.
PER CURIAM.
The defendants, Deanna Doyle-Vallery, M.D.; Deanna Doyle-Vallery, M.D., P.A.; and Corcoran, Easterling & Doyle-Vallery, Ltd., appeal a postjudgment order granting attorneys' fees and utilizing a multiplier to calculate the award pursuant to section 768.79, Florida Statutes (2001). We affirm the trial court's order. This court has held that trial courts may consider and apply a contingency risk multiplier when awarding attorneys' fees under the offer of judgment statute. See Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275 (Fla. 2d DCA 2000). Although Judge Casanueva's dissent in Pirelli Armstrong presents a strong argument, the supreme court has accepted review of this issue in Allstate Insurance Co. v. Sarkis, 809 So.2d 6 (Fla. 5th DCA 2001), review granted, 826 So.2d 992 (Fla.2002) (holding trial courts are without legal authority to utilize contingency multiplier under section 768.79). Accordingly, we certify conflict with Sarkis.
Affirmed.
DAVIS and CANADY, JJ., concur.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring.
I concur in the decision to certify conflict with the Fifth District's decision in Sarkis. If this panel were writing on a clean slate and if the issue were not already before the supreme court, I would vote to prohibit the use of a multiplier in determining a reasonable fee under section 768.79, Florida Statutes (2001).
Although I agree with most of Judge Casaneuva's dissent in Pirelli, I am not convinced this issue necessitates a constitutional ruling. The matter should be resolved as a matter of statutory interpretation. The courts should interpret the reach of this statute to assure that the *1199 statute achieves its intended purpose and only that purpose.
The legislature created this statute to reduce the costs and the length of litigation while maintaining a neutral playing field. When the legislature inserted the phrase, "along with all relevant criteria," into section 768.79(7)(b), it intended to incorporate those criteria relevant to these goals. The legislature did not intend for courts to use criteria that favor one side in the litigation over the other. As explained below, the multiplier has that effect. The legislature also did not intend for the courts to use criteria designed to promote more litigation rather than to limit existing litigation. It is beyond dispute that the multiplier was created to promote litigation, not to limit it. Thus, as a matter of simple statutory construction, the multiplier is not a "relevant criterion."
Judge Casanueva is correct in his two most important observations. First, the multiplier was created primarily to promote the goal of access to courts. See Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 833 (Fla.1990); Fla. Patient's Comp. Fund v. Rowe, 472 So.2d 1145, 1151 (Fla.1985). Using a multiplier encourages lawyers to accept representation at the inception of certain cases when lawyers might not otherwise accept such cases. The legislature and the courts apply a multiplier to assure that lawyers receive a sufficient economic incentive to represent clients who need access to the courts and cannot achieve that access without such incentives. Thus, the multiplier is designed to achieve a public policy that is separate and distinct from the policy of encouraging early settlement of lawsuits. If anything, by encouraging the filing of more lawsuits, the multiplier creates congestion in the judicial system that makes it more difficult for section 768.79 to achieve the goal of quicker, less expensive litigation.[1]
Second, defense attorneys have no feasible means of entering into employment contracts based upon a contingency fee. As a result, the existing rules would rarely, if ever, permit the defendant to recover a fee that included a multiplier. This may not violate equal protection, but it does affect the workings of this statute. Because the multiplier benefits only the plaintiff, if it applies to the fees imposed under section 768.79, that statute will necessarily shift the value of lawsuits in favor of the plaintiff.
Perhaps an example can help demonstrate this mathematical circumstance. In a case involving no fee shifting, if the plaintiff's attorney and the defendant's attorney have performed adequate discovery, they should know that the plaintiff has a certain probability of receiving a favorable verdict and that the award is likely to fall within a realistic range for such injuries. For example, in an automobile collision case, the lawyers might conclude that the plaintiff has a 60% chance of winning and the reasonable range of the verdict might vary between $80,000 and $150,000. Prior to trial, such a case has a present value between $48,000 and $90,000. The defendant, in order to avoid the costs of defense and the risks of uncertainty, would be well advised to settle this case for *1200 $75,000. The plaintiff, in order to avoid the 40% risk of no recovery, would likewise be well advised to settle for this amount.[2] Under these rules, rational decision makers will settle this case for approximately $75,000.
If the risk of paying attorneys' fees is added to this equation and the amount of the fees on both sides of the litigation is similar, this extra cost to achieve the outcome will not significantly affect the mathematical analysis and the parties should still settle the case for approximately $75,000. However, if the multiplier is used and only the lawyer with a contingency fee may recover this added fee, then the defendant faces a risk of paying a higher cost to achieve the outcome than the plaintiff faces. As a result, the mathematical point of equilibrium, where a settlement should occur, will shift in favor of the plaintiff. If the multiplier applies, the rational point for settlement might shift from $75,000 to $80,000.[3] Without regard to the precise math, the point of settlement should always shift in favor of the plaintiff if both sides are presenting realistic offers of judgment.
"Different types of cases require different criteria to achieve the legislative or court objective in authorizing the setting of a reasonable attorney's fee." Quanstrom, 555 So.2d at 833. "We emphasize that the criteria and factors utilized in these cases must be consistent with the purpose of the fee-authorizing statute or rule." Id. at 834. There is no legislative history suggesting that the legislature passed section 768.79 to favor plaintiffs. It seems inconceivable that the statute should be so interpreted if such an interpretation can be avoided. Because the legislature did not expressly mandate a multiplier and such a factor can be judicially authorized only as a criterion "relevant" to the purposes of this statute, the courts should reject the temptation to permit a multiplier merely because it is used to set reasonable fees in other contexts.
NOTES
[1] It should be noted that a defendant filing an offer of judgment under section 768.79 in a case where a multiplier is authorized by another statute should presumably include within that offer an award of attorneys' fees sufficient to allow for an appropriate multiplier. The issue in this case is not the fees awardable as a portion of the offer, but the fees to be assessed against a party for an imprudent rejection of a sufficient offer. There is no other statute in this case that would permit the plaintiff to recover a court-awarded fee including a multiplier.
[2] This example is a simple description of decision tree analysis, a mathematical model for economic decision making that assesses the probabilities of various outcomes and the costs of achieving those outcomes. Such models can be adapted to include many additional factors, such as comparative negligence. See Mind ToolsDecision Tree Analysis, at http://www.mindtools.com/dectree.html (last visited Jan. 31, 2003).
[3] The author has intentionally omitted a precise mathematical example in this concurrence. In part, he fears that such an example might dissuade those who hate math. In larger part, he dreads the personal embarrassment that could flow from the publication of his own faulty mathematical analysis. See Gingola v. Velasco, 668 So.2d 1054 n. 1 (Fla. 2d DCA 1996) (correcting faulty mathematical formula created by author of concurrence).