863 So.2d 210 (2003)
Sally SARKIS, Petitioner,
v.
ALLSTATE INSURANCE COMPANY, Respondent.
No. SC02-428.
Supreme Court of Florida.
October 2, 2003.
*211 Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, FL; and Robert M. Moletteire of Graham, Moletteire & Torpy, P.A., Melbourne, FL, for Petitioner.
Charles W. Hall of Fowler White Boggs Banker P.A., St. Petersburg, FL; and Richard A. Sherman, Fort Lauderdale, FL, for Respondent.
Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, FL, for The Academy of Florida Trial Lawyers, Amicus Curiae.
Roy C. Young of Young, Van Assenderp, Varnadoe & Anderson, P.A., Tallahassee, FL, for Florida Chamber of Commerce, Amicus Curiae.
Wendy F. Lumish of Carlton Fields, P.A., Miami, FL, for Florida Defense Lawyers Association, Amicus Curiae.
PER CURIAM.
We have for review Allstate Insurance Co. v. Sarkis, 809 So.2d 6 (Fla. 5th DCA 2001), which expressly and directly conflicts with Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275 (Fla. 2d DCA 2000), review dismissed, 777 So.2d 973 (Fla.2001), and Collins v. Wilkins, 664 So.2d 14 (Fla. 4th DCA 1995). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
The petitioner, Sally Sarkis (Sarkis), was involved in an automobile accident, as a result of which she suffered damages. Sarkis brought an action against her insurer, respondent Allstate Insurance Company (Allstate), requesting compensation based on her uninsured motorist coverage.
Prior to trial, Sarkis filed an offer of judgment for $10,000, pursuant to section 768.79, Florida Statutes (1997), and Florida Rule of Civil Procedure 1.442. This offer was rejected by Allstate. The case proceeded to trial, and Sarkis was ultimately awarded a net judgment of $87,700, which was twenty-five percent greater than her offer of judgment. Sarkis therefore moved for an award of attorney fees and costs.
The trial court found that the jury verdict returned on behalf of Sarkis was twenty-five percent greater than the offer of judgment, thereby entitling Sarkis to an award of attorney fees pursuant to section 768.79 and rule 1.442. In considering whether to apply a contingency risk multiplier to Sarkis's award of attorney fees, the trial court stated:
4. The Court has also reviewed a number of attorney's fee orders awarding Robert M. Moletteire, Esquire a reasonable hourly rate of $350.00. More particularly, two of the orders that are a part of this file contain stipulations by ALLLSTATE INSURANCE COMPANY that a reasonable hourly rate for Robert M. Moletteire in the handling of a personal injury protection lawsuit was $350.00 per hour.
5. The Court further finds, based upon the testimony of Robert M. Moletteire, *212 Esquire, counsel for Plaintiff, and O. John Alpizar, Esquire, that the relevant market in Brevard County required a multiplier in order for Plaintiff, SALLY SARKIS, to obtain competent counsel to try this underinsured motorist claim. Plaintiff has presented substantial evidence in the record that she would otherwise [have] been unable to afford competent counsel. The Court finds that counsel for the Plaintiff was unable to mitigate the risk of nonpayment in any way.
6. The Court finds that Plaintiff has presented ample testimony from the record that Defendant, ALLSTATE INSURANCE COMPANY, as a practice on a national level as well as more particularly in Brevard County, vigorously defends claims of the nature brought by the Plaintiff in this case. Plaintiff presented ample testimony in the record that there is a strong likelihood that any claim made against Defendant, ALLSTATE INSURANCE COMPANY, will require a trial. Counsel for Plaintiff was aware of that at the outset of accepting to represent the Plaintiff in this claim.
7. The Court further finds that the record speaks for itself that Plaintiff obtained a successful result in the trial of this case.
8. The Court further finds the following facts presented at trial to be important additional factors in determining a contingency risk multiplier:
a. Plaintiff, SALLY SARKIS, had a pre-existing complaint of low back pain prior to the accident that gave rise to this lawsuit.
b. That the jury heard testimony that Ms. Sarkis had been involved in 2 to 3 prior accidents involving personal injury to her neck and back.
c. That Defendant vigorously argued Plaintiff's low back injury was not due to the automobile accident that was the subject matter of this lawsuit, but instead was due to degeneration and prior traumatic events.
IT IS HEREBY ORDERED AND ADJUDGED that the following attorney's fees award be made.

1. Hours reasonably incurred: 167 hours
 Reasonable hourly rate: 350.00 per hour
 Lodestar: $58,450.00
 Contingency Risk Multiplier: 1.5
 Total Attorney's Fees: $87,675.00

Sarkis v. State, No. 97-10784-CA-H (Fla. 18th Cir. Ct. order filed July 11, 2000).
Allstate appealed the trial court's award of attorney fees to the Fifth District Court of Appeal. The district court, sitting en banc, reversed the trial court's order, holding as a matter of law that contingency risk multipliers are not to be used to compute attorney fees under section 768.79, Florida Statutes. Sarkis, 809 So.2d at 8. The court adopted the dissenting view of Judge Casanueva in Pirelli Armstrong Tire, 752 So.2d at 1277 (Casanueva, J., concurring in part and dissenting in part), that neither Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), nor section 768.79 authorizes the use of contingency risk multipliers in calculating attorney fees awarded under the offer of judgment statute.[1] In so holding, the *213 court receded from its prior decisions in Garrett v. Mohammed, 686 So.2d 629 (Fla. 5th DCA 1996); Strahan v. Gauldin, 756 So.2d 158 (Fla. 5th DCA 2000); and Internal Medicine Specialists, P.A. v. Figueroa, 781 So.2d 1117 (Fla. 5th DCA 2001). The district court further acknowledged conflict with Pirelli and Collins.
The issue of the use of a multiplier to calculate the amount of an award of reasonable attorney fees on the basis of the authority of section 768.79 and rule 1.442 has been the subject of a multiplicity of opinions in the district courts. In 1995, the Fourth District Court of Appeal issued its opinion in Collins v. Wilkins, 664 So.2d 14 (Fla. 4th DCA 1995). In a brief opinion, the district court stated:
The statute provides:
When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:
§ 768.79(7)(b), Fla. Stat. (1993) (emphasis supplied). The statute follows with enumerated additional factors for the court to consider. However, these are not exclusive but, as the statute says, must be considered with the other relevant criteria. Since the statute also refers the court to the guidelines promulgated by the supreme court in determining a reasonable fee, see section 768.79(6)(a), (b), Florida Statutes (1993), we look to the Rules of Professional Conduct, Rule 4-1.5, Fees for Legal Services, for the factors to be considered in determining a reasonable fee. These include whether or not the fee is fixed or contingent. Rule 4-1.5(b)(8). The rule also specifies that all factors should be considered in setting a reasonable fee, "and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors." Rule 4-1.5(c). Therefore, we conclude that the legislature authorized a trial court to consider the application of a contingency risk factor as one criterion which may be applied in determining a reasonable fee under section 768.79. See also Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828, 831 (Fla.1990).
Collins, 664 So.2d at 15.
Recently, in Island Hoppers, Ltd. v. Keith, 820 So.2d 967 (Fla. 4th DCA 2002), the Fourth District again considered the application of a multiplier in this context and provided a more extensive analysis. The district court wrote:
This court addressed the applicability of a contingency risk multiplier in the offer of judgment context in Collins v. Wilkins, 664 So.2d 14 (Fla. 4th DCA 1995).... [W]e concluded that the legislature had authorized a trial court to consider the application of a contingency risk factor as one criterion which may be applied in determining a reasonable fee under section 768.79. Collins, 664 So.2d at 15.
....
... We see no reason to recede from our prior holding, especially where Judge Casanueva expressly admits in his dissenting opinion, "[B]y referring to the fees for legal services rule, the Fourth ... assert[s] that the legislature statutorily authorized trial courts to apply a contingency risk multiplier in determining a reasonable fee under section 768.79 ... arguably, a reading of the fee factors promulgated by our supreme court could support this holding...." *214 Pirelli Armstrong, 752 So.2d at 1277. Thus, we maintain trial courts are legally authorized (by the legislature) to consider application of a contingency risk multiplier under the offer of judgment statute.
Furthermore, we find no logical inconsistency in the application of the Quanstrom factual requirements in the offer of judgment context. We recognize whenever a potential client walks through an attorney's door for the first time, a wide array of factors enter the calculus as to whether or not counsel will in fact decide to undertake that representation. Rowe and Quanstrom recognized potential clients whose cases seem to have a relatively low likelihood of success at the outset, may face considerable difficulties in securing counsel, and may often be unable to afford competent counsel. As such, the multiplier was established, to serve as an incentive of sorts, for attorneys to undertake representation where a risk of nonpayment was established. Although an attorney contemplating representation of a particular client can never "know" for certain whether or not entitlement to a fee award under 768.79 will ultimately be established, surely skilled counsel can, contrary to the words of Chief Judge Schwartz in Gonzalez, "anticipate" such. Offers of judgment, as well as requests to apply multipliers, have clearly become part and parcel of litigation in the state of Florida; this court need only look to any monthly docket to recognize such. We find no inconsistency in holding competent counsel can "anticipate" the eventual filing of a 768.79 offer of judgment, "anticipate" the possible entitlement to fees if the statutory prerequisites are met, and "anticipate" the possibility said fee award will be multiplied. Accordingly, we find no logical inconsistency in application of the Quanstrom requirements to the offer of judgment context, and move to consider the application of said requirements to the instant case.
Island Hoppers, 820 So.2d at 973-75 (footnote omitted).
The use of a multiplier in section 768.79 circumstances has also been both denied and questioned in the district courts. In Pirelli Armstrong Tire, the Second District Court of Appeal aligned with the Fourth District Court of Appeal's decision in Collins and the Fifth District Court of Appeal's then existing decision in Garrett, and approved the use of a multiplier of 2.5 to increase the lodestar figure of $414,000 to over $1 million.[2] In a dissent, Judge Casanueva found that the use of a contingency risk multiplier in the context of section 768.79 violated the constitutional principle of equal protection because only one side in a civil actionthe plaintiffis eligible under a rule 4-1.5 analysis to receive a contingency risk multiplier since it is the plaintiff that is taking the risk of commencing the action. Judge Casanueva concluded that this Court's decisions in Quanstrom and Rowe did not justify the multiplier's use in this manner. As a second basis for his dissent, Judge Casanueva concluded that the statutory language of section 768.79 does not expressly provide judicial authority to use a multiplier. Judge Casanueva wrote:
Without this express directive, the court lacks the authority to use a multiplier. In subsection (1), where it created the statutory entitlement to an attorneys' fee, the legislature defined and limited the award of fees to those incurred within a specified period. Fees are only awardable for services rendered between *215 the date of filing an offer or demand that was subsequently rejected and the conclusion of the litigation. The rejected demand or offer, the legislature decreed, was admissible only to pursue the statute's penalty provisions. The fees for legal services performed during this period were to be calculated in accordance with supreme court guidelines. Rules 4-1.5(b) and (c) of the Rules Regulating the Florida Bar identify factors to be considered in determining a reasonable fee. Nowhere in rule 4-1.5 is there a specific mention of a multiplier. Attorneys' fees are authorized only by statute or contract. Because a supreme court rule is neither, it cannot authorize a fee. It is the legislature's task to enact substantive law, see TGI Friday's Inc. v. Dvorak, 663 So.2d 606, 611 (Fla. 1995), and even though it created a substantive right to an attorney's fee calculated between two points in time, it did not create a substantive right to have that fee multiplied.
In addition to providing for a penalty or sanction in subsection (7), the legislature specifically granted a trial court the authority to disallow the entitlement to attorneys' fees where it concluded the offer was not made in good faith. The interplay between the subsections evinces a clear legislative intent to penalize where appropriate and to provide a mechanism to deny a fee where the offer was not made in good faith. That same clarity of expression could have been used to authorize a multiplier but was not.
Pirelli Armstrong Tire, 752 So.2d at 1278-79 (Casanueva, J., concurring in part and dissenting in part).
Then, in Doyle-Vallery v. Aranibar, 838 So.2d 1198 (Fla. 2d DCA 2003), a case in which the majority noted that Judge Casanueva's dissent in Pirelli Armstrong Tire "presents a strong argument" and that this Court had accepted review of this issue in the present case, Judge Altenbernd wrote a concurring opinion. Judge Altenbernd stated that "if this panel were writing on a clean slate and if the issue were not already before the supreme court, I would vote to prohibit the use of a multiplier in determining a reasonable fee under section 768.79, Florida Statutes (2001)." Doyle-Vallery, 838 So.2d at 1198 (Altenbernd, J., concurring).[3] Judge Altenbernd stated that he would hold that the multiplier was not applicable on the basis that the use of a multiplier to enhance fees awarded pursuant to section 768.79 would be contrary to legislative intent. Judge Altenbernd wrote:
Although I agree with most of Judge Casanueva's dissent in Pirelli, I am not convinced this issue necessitates a constitutional ruling. The matter should be resolved as a matter of statutory interpretation. The courts should interpret the reach of this statute to assure that the statute achieves its intended purpose and only that purpose.
The legislature created this statute to reduce the costs and the length of litigation while maintaining a neutral playing field. When the legislature inserted the phrase, "along with all relevant criteria," into section 768.79(7)(b), it intended to incorporate those criteria relevant to these goals. The legislature did not intend for courts to use criteria that favor one side in the litigation over the other. As explained below, the multiplier has that effect. The legislature also did not intend for the courts to use criteria designed to promote more litigation rather than to limit existing litigation. It is *216 beyond dispute that the multiplier was created to promote litigation, not to limit it. Thus, as a matter of simple statutory construction, the multiplier is not a "relevant criterion."
Judge Casanueva is correct in his two most important observations. First, the multiplier was created primarily to promote the goal of access to courts. See Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 833 (Fla.1990); Fla. Patient's Comp. Fund v. Rowe, 472 So.2d 1145, 1151 (Fla.1985). Using a multiplier encourages lawyers to accept representation at the inception of certain cases when lawyers might not otherwise accept such cases. The legislature and the courts apply a multiplier to assure that lawyers receive a sufficient economic incentive to represent clients who need access to the courts and cannot achieve that access without such incentives. Thus, the multiplier is designed to achieve a public policy that is separate and distinct from the policy of encouraging early settlement of lawsuits. If anything, by encouraging the filing of more lawsuits, the multiplier creates congestion in the judicial system that makes it more difficult for section 768.79 to achieve the goal of quicker, less expensive litigation.
Second, defense attorneys have no feasible means of entering into employment contracts based upon a contingency fee. As a result, the existing rules would rarely, if ever, permit the defendant to recover a fee that included a multiplier. This may not violate equal protection, but it does affect the workings of this statute. Because the multiplier benefits only the plaintiff, if it applies to the fees imposed under section 768.79, that statute will necessarily shift the value of lawsuits in favor of the plaintiff.
Doyle-Vallery, 838 So.2d at 1198-99 (Altenbernd, J., concurring) (footnote omitted).
In 1999, the Third District Court of Appeal, in Gonzalez v. Veloso, 731 So.2d 63 (Fla. 3d DCA 1999), affirmed a trial court's denial of a multiplier in a case in which the plaintiff's offer of judgment exceeded the section 768.79 twenty-five-percent requirement. In writing for the court, Judge Schwartz stated: "[T]here [is no] evidence in the record that the prevailing party would have been unable to obtain competent counsel." Id. at 64 (quoting Askowitz v. Susan Feuer Interior Design, Inc., 563 So.2d 752, 754 (Fla. 3d DCA 1990)). Judge Schwartz further questioned
[w]hether any such showing can ever be made, and thus whether a multiplier is ever appropriate when fees are awardable only when a reasonable offer is not accepted under § 768.79, an eventuality which obviously cannot be anticipated when counsel is obtained.
Gonzalez, 731 So.2d at 64 n. 2.
In Amisub (American Hospital), Inc. v. Hernandez, 817 So.2d 870 (Fla. 3d DCA 2002), the Third District Court of Appeal again reviewed the application of a multiplier in a section 768.79 situation. The court wrote:
Our inquiry in this case, based on the Quanstrom criteria, is "whether the relevant market requires a contingency fee multiplier to obtain competent counsel" when fees are awarded for failure to accept an offer under Section 768.79. Although three law firms refused Hernandez's case, Charlip accepted the case based on a forty-five percent contingency fee arrangement.
Hernandez contends that although Charlip originally agreed to a contingency fee, the litigation became overbearing. Therefore, the availability of a contingency *217 fee multiplier became essential to Charlip's continued representation.
We reject this argument for two reasons. First, in Quanstrom, the Court specifically refers to obtaining counsel in the first instance, not whether counsel continues the case after prolonged litigation.
Second, the record does not support Hernandez's argument. After the first trial ended in an adverse directed verdict, Charlip and Hernandez renegotiated their fee and cost arrangement. If Charlip had made the determination to proceed with the case in the hope of obtaining a contingency fee multiplier, he would not have renegotiated the fee agreement with Hernandez. Clearly, Charlip was willing to continue representing Hernandez once he revisited the fee arrangement and mitigated his risk.
Charlip's failure to satisfy two of the Quanstrom requisites, the ability to obtain competent counsel in the relevant market and the ability to mitigate the risk of nonpayment in any way, negate the application of a multiplier. Therefore, we reverse that portion of the trial court's order applying a 2.5 multiplier to the attorney's fees award. See Gonzalez v. Veloso, 731 So.2d at 64.
Id. at 873.
The First District Court of Appeal has held that a trial court should have considered the applicability of a contingency risk multiplier in connection with a section 768.79 attorney fee award in Lewis v. Bondy, 752 So.2d 1225 (Fla. 1st DCA 2000), and subsequent cases. In Lewis, the court aligned with the majority in Pirelli Armstrong Tire, but did not set forth independent analysis. However, in Brown & Williamson Tobacco Corp. v. Carter, 848 So.2d 365 (Fla. 1st DCA 2003),[4] the court reversed the trial court's application of the multiplier in a section 768.79 attorney fee award.
Finally, prior to its decision in the present case, the Fifth District Court of Appeal had also held that a multiplier was applicable under section 768.79. See Tetrault v. Fairchild, 799 So.2d 226 (Fla. 5th DCA 2001). We find, however, that Judge Harris's concurring opinion in this case is noteworthy. In his opinion, Judge Harris wrote an extensive analysis concerning the application of a multiplier in a section 768.79 attorney fee award. In part, Judge Harris wrote:
[Another] reason for denying application of the multiplier in offer of judgment cases was well developed by Judge Casanueva in his dissent in Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275 (Fla. 2d DCA 2000). Judge Casanueva based his opinion on equal protection guarantees. It can just as well be argued that to apply the multiplier in offer of judgment cases is contrary to clear legislative intent. The legislature in section 768.79 carefully crafted a party neutral fee provision to encourage settlement by assessing identical risks against each party if an offer is improperly rejected. By applying the multiplier (applicable only to plaintiffs), the courts will have destroyed the neutrality intended by the legislature and will have given great advantage to plaintiff: "If I lose, I must pay your reasonable fee; if you lose, you must pay up to two-and-a-half times my reasonable fee." The supreme court emphasized that the "criteria and factors" utilized in setting a reasonable attorney's fee *218 "must be consistent with the purpose of the fee-authorizing statute or rule." Quanstrom, 555 So.2d at 834. Granting a multiplier for only one of the parties would not be consistent with the purpose of the offer of judgment statute which is to put both parties on the same footing when reasonably evaluating the case.
Tetrault, 799 So.2d at 235 (Harris, J., concurring and concurring specially).

ANALYSIS
We approve the Fifth District Court of Appeal's decision. We hold that the use of a multiplier in awarding attorney fees authorized by section 768.79, Florida Statutes, is error. This conclusion follows this Court's precedent in which we have construed the offer of judgment statutes since their adoption in 1986, ruled upon their constitutionality, and adopted rules of civil procedure implementing them.
In sum, we have recognized that attorney fees awarded pursuant to the offer of judgment statutes are sanctions. These fees are awarded as sanctions for unreasonable rejections of offers of judgment. We have set forth in rule 1.442 the factors to be considered in determining a reasonable amount of attorney fees awarded as sanctions. We have not included the use of a multiplier in the rule as a factor to be considered in the award of attorney fees. Because attorney fees awarded under the offer of judgment statute are sanctions against the party against whom the sanction is levied, we have held that the statute and rule must be strictly construed. We here examine our precedent.
We first adopted an offer of judgment rule of procedure in 1972. In re the Florida Bar, 265 So.2d 21 (Fla.1972). That rule was the same as Federal Rule of Civil Procedure 68 and provided that if the judgment finally obtained by the adverse party was not more favorable than the offer of judgment, the adverse party had to pay the costs incurred after making the offer.[5]
Thereafter, the Legislature enacted two offer of judgment statutes. In 1986, the Legislature enacted section 768.79, and in 1987, the Legislature enacted section 45.061, Florida Statutes (1987).[6] In 1988, we requested the Civil Procedure Rules Committee to examine any conflict between sections 45.061 and 768.79 and rule 1.442. In response, the Committee petitioned for adoption of a new rule of civil procedure.
In its petition, the majority of the Committee proposed a sanction for the failure to accept a bona fide offer of settlement of fifteen percent of an unaccepted offer to pay. The Committee contended that the then existing sanction, consisting only of costs, was inadequate to deter unnecessary litigation. The Committee also urged this Court to declare unconstitutional sections 768.79 and 45.061, Florida Statutes. A minority of the Committee and the Board of Governors of The Florida Bar urged this Court to return to the then current rule's sanctions of costs only and to declare the statutes unconstitutional.
In ruling upon the petition and adopting a new rule, we stated:

*219 The proposal submitted by the Committee raises a serious question of whether this Court impinges upon the legislative prerogative to enact substantive law if we adopt a "procedural" sanction of this type.... [I]t is not so clear that a sanction is "procedural" when it imposes a "fine" based on a percentage of an unaccepted offer, especially when a party may have done nothing more serious than guessing wrong about a jury verdict.
We do not find it necessary, however, to reach this question.... We believe it is wiser policy to have a sanction based on costs and attorneys fees. This is what the legislature did in both of the statutes under review in this opinion, and this legislative determination is persuasive. Accordingly, we have modified the proposed rule as set forth in the appendix to this opinion to reflect the major components of the statutes in question.
... Our final rule imposes a sanction based entirely on costs and attorneys fees, but strengthens the existing rule to permit sanctions whenever an offer of judgment is unreasonably refused and the subsequent judgment is disproportionate to that offer by more than 25%. For instance, we have added extensive new language defining what can constitute an unreasonable refusal and clarifying the extent of the trial court's discretion on this question.

Florida Bar re Amendment to Rules of Civil Procedure, Rule 1.442 (Offer of Judgment), 550 So.2d 442, 442-43 (Fla.1989) (emphasis added). We then declined to address the statutes' constitutionality in the nonadversarial rules proceeding. We did, however, recognize the confusion by reason of the difference between the statutes and the then existing rule 1.442. We thus withdrew the then existing rule 1.442, effective January 1, 1990, and replaced it with a new rule 1.442.[7] We held that, to *220 the extent the new rule's procedural aspects were inconsistent with the statutes, the rules superseded the statutes.
Shortly after our adoption of the new rule 1.442, we considered a decision of the Fifth District Court of Appeal in Milton v. Leapai, 562 So.2d 804 (Fla. 5th DCA 1990), in which the district court held section 45.061, Florida Statutes (1987), unconstitutional concerning offers of settlement because the statute infringed upon the exclusive rule-making authority of the Supreme Court. The district court had reached its conclusion in answering two certified questions from a county court. The first certified question was whether the statute was constitutional. The second certified question was whether attorney fees could be imposed as sanctions under the statute where the offer of settlement was made subsequent to the enactment of the statute but where the cause of action accrued prior to the enactment of the statute. Id.
We reversed the district court as to its holding of the offer of settlement statute unconstitutional and remanded with directions that the county court's award of attorney fees be reinstated. We then addressed the second certified question from the county court. That answer is important in respect to the issue which we now decide. We stated:
Having found the statute constitutional as modified by our rule, we next must address the question of whether section 45.061, Florida Statutes (1987), is constitutional as applied. In this instance, we agree with Leapai that the statute was not applied retroactively since the right to recover attorney fees attaches not to the cause of action, but to the unreasonable rejection of an offer of settlement. As noted in our statement of facts, the offer and rejection of the offer occurred after the act had been adopted by the legislature.
Leapai v. Milton, 595 So.2d 12, 15 (Fla. 1992) (emphasis added).
Later, in 1992, we considered the interplay between sections 45.061 and 768.79 in Timmons v. Combs, 608 So.2d 1 (Fla.1992). We noted that the Legislature had repealed section 45.061 with respect to causes of action accruing after October 1, 1990,[8] and had amended section 768.79 in 1990.[9] We then found that section 768.79 contained procedural aspects which were subject to this Court's rule-making authority. We therefore repealed the then existing rule 1.442 and adopted the procedural portions of section 768.79 as a rule of this Court, effective as of the date of the Timmons opinion. Timmons, 608 So.2d at 3. In a supplemental order, we requested the Civil Procedure Rules Committee to address the adoption of a new rule and authorized the submission of a proposed rule outside of the four-year cycle. Timmons, 608 So.2d at 3.
In 1995, we again considered the statutes and rule in TGI Friday's, Inc. v. Dvorak, 663 So.2d 606 (Fla.1995).[10] In *221 that case, the Fourth District Court of Appeal had made four holdings, which we expressly approved. Id. at 611. We stated:
In Leapai, this Court upheld the constitutionality of section 45.061 and found that the statute did not infringe on the rule-making authority of the Court. Finding no relevant distinction between section 45.061 and section 768.79, the district court ruled that section 768.79 was likewise constitutional.
Second, the district court held that rule 1.442 could be applied to this case despite the fact that Dvorak's cause of action preceded the effective date of the rule. The district court once again relied on this Court's decision in Leapai and our holding that section 45.061 could be retroactively applied to a cause of action so long as the statute was enacted before the offeree's rejection of the offer of judgment. The district court held that the same reasoning should apply to rule 1.442, and found that the rule would apply in this instance because TGI Friday's rejected Dvorak's offer after rule 1.442 became effective.
TGI Friday's, 663 So.2d at 610 (emphasis added). In its third and fourth holdings, the district court held that under the statutes and rule, the issue of whether TGI Friday's had unreasonably rejected the offer of judgment had no bearing on whether Dvorak was entitled to an award of attorney fees.
We noted that while the reasonableness of the rejection of an offer had no bearing on the issue of entitlement to fees, the factors set forth in section 768.79(2)(b),[11] which had been incorporated into rule 1.442, would have a bearing on the amount of attorney fees awarded by the court. We stated:
[I]t is equally clear that these enumerated factors are intended to be considered in the determination of the amount of the fee to be awarded. Thus, in a given case, the court could justifiably reduce the amount of the attorney's fee to be assessed against a severely injured plaintiff who suffered an adverse verdict after rejecting a small settlement offer. By the same token, the court could reasonably conclude that a defendant with a small liability potential who rejected a large settlement offer should pay only a reduced fee even though the verdict ultimately exceeded the offer by more than twenty-five percent.
TGI Friday's, 663 So.2d at 613.
In 1996, in In re Amendments to Florida Rules of Civil Procedure, 682 So.2d 105 (Fla.1996), we adopted rule 1.442 in a form recommended by the Civil Procedure Rules Committee, except for two recommendations which we determined were in conflict with TGI Friday's.[12] By its express *222 statement in subdivision (a), the rule applies to all proposals for settlement authorized by Florida law regardless of the terms used to refer to the proposals. Subdivision (a) also expressly provides that the rule superseded all other provisions of rules and statutes inconsistent with the new rule that we adopted by the opinion. The new rule was therefore made applicable to an award of attorney fees pursuant to section 768.79. Subdivision (h)(2) of the rule provides the factors that a court is to use in determining the amount of attorney fees awarded for refusal to accept a proposal for settlement.[13]
As noted at the beginning of this analysis, the detailed history of our cases construing the offer of judgment statutes and the adoption of rule 1.442 reflect that an award of attorney fees authorized by section 768.79 is a sanction against the rejecting party for the refusal to accept what is presumed to be a reasonable offer. This is a sanction levied against the rejecting party for unnecessarily continuing the litigation. The statute specifically limits the attorney fees to fees incurred after the date the offer was served upon the rejecting party. § 768.79(6)(a)-(b), Fla. Stat. (1997). The right to the award of attorney fees attaches to the rejection of the offer of judgment, not to the cause of action. Leapai, 595 So.2d at 15. The factors specified in rule 1.442 each have to do with the evaluation and nature of the offers and the case in litigation.
We have recognized that the use of a multiplier must be consistent with the purpose of the fee-authorizing statute or rule. Quanstrom, 555 So.2d at 834; see also Bell v. U.S.B. Acquisition, Inc., 734 So.2d 403, 408-09 (Fla.1999). The reason for an award of attorney fees authorized as a sanction for the rejection of an offer to settle is very different from the reason that we authorized the use of a multiplier in Quanstrom, 555 So.2d at 833, and Rowe, 472 So.2d at 1151. In those cases, we authorized the use of a multiplier to promote access to courts by encouraging lawyers to undertake representation at the inception of certain cases. See Doyle-Vallery, 838 So.2d at 1198-99 (Altenbernd, J., concurring). We agree with the Third District Court of Appeal's analysis in Amisub that Quanstrom specifically refers to obtaining counsel in the first instance. Amisub, 817 So.2d at 872-73. It is self-evident that attorney fees awarded as a sanction under section 768.79 and rule 1.442 are awarded after an attorney has already been obtained and agreed to undertake *223 the case, and thus the use of a multiplier is not consistent with the purpose of the fee-authorizing statute. Quanstrom and Rowe do not justify the use of a multiplier in awards of attorney fees authorized by section 768.79 and made in compliance with rule 1.442.
Furthermore, we have recognized that statutory authorization for attorney fees is to be strictly construed. Gershuny v. Martin McFall Messenger Anesthesia Prof. Ass'n, 539 So.2d 1131, 1132 (Fla.1989). We have also recognized that a statute imposing a penalty must be strictly construed in favor of the one against whom the penalty is imposed and is never extended by construction. Hotel & Restaurant Comm'n v. Sunny Seas No. One, Inc., 104 So.2d 570, 571 (Fla.1958). We have recently applied this rule of strict construction to section 768.79. See Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276 (Fla.2003).
Throughout the statutory and rule history of offers of judgment, the use of a multiplier has never been expressly authorized. Neither section 768.79 nor rule 1.442 authorizes the use of a multiplier in determining the amount of attorney fees as a sanction for the rejection of an offer. Applying a strict construction of the statute and rule, a multiplier therefore cannot be applied under section 768.79 or rule 1.442, and the trial court's application of a multiplier in this case was error. From our reading of the trial court's "Judgment Award of Attorney's Fees and Costs" in the present case, we do not see that the trial court used the factors of rule 1.442(h)(2) to determine the amount of the attorney fees award. Upon remand, the trial judge should use these factors in calculating the award, as well as the reasonable hourly rate and time, which the judge had already determined.[14] A multiplier is not authorized.
We therefore approve the decision of the Fifth District Court of Appeal in this case and remand for further proceedings in accord with this opinion. We disapprove Pirelli Armstrong Tire from the Second District, Island Hoppers from the Fourth District, and Lewis from the First District. The decisions in those cases failed to consider the 1996 version of rule 1.442 and approved the use of a multiplier though rule 1.442 did not.
It is so ordered.
ANSTEAD, C.J., and LEWIS, QUINCE, and BELL, JJ., concur.
CANTERO, J., recused.
WELLS, J., concurring.
I write to state the reasons that I do not agree with Justice Pariente's analysis in her dissenting opinion.
(1) In this case, as with all cases in which a trial court is to consider attorney fees under Florida Rule of Civil Procedure 1.442, counsel agreed to the representation of the client and entered into a contract with the client for the representation prior to the offer of judgment. Therefore, in these cases, the very first factor set forth in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985), and Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla.1990), justifying a fee multiplier, which is whether a fee enhancement is required to obtain competent counsel, cannot be met because when an offer of judgment is made and rejected, counsel has already been obtained. This is the essential point made by the Third District in Amisub, Inc. v. *224 Hernandez, 817 So.2d 870 (Fla. 3d DCA 2002), and quoted by the majority. Majority op. at 216-17. Rowe and Quanstrom, therefore, do not support a multiplier under the offer of judgment statute and rule.
In her dissent, Justice Pariente relies on this Court's decision in Bell v. U.S.B. Acquisition Co., 734 So.2d 403 (Fla.1999). However, Bell was a case in which this Court emphasized that the use of the multiplier in contract cases was limited to those cases in which it was demonstrated that counsel could not have been obtained without the inducement of the fee multiplier. This was the basis upon which this Court distinguished the denial of the use of a fee multiplier in Sun Bank of Ocala v. Ford, 564 So.2d 1078 (Fla.1990). In offer of judgment cases, since counsel is already obtained, Bell does not apply.
(2) The fees authorized by section 768.79, Florida Statutes, and rule 1.442 are expressly authorized as sanctions against the party who rejects a reasonable offer of judgment, not as an inducement to obtain counsel. This fact is plain because section 768.79(1), Florida Statutes, expressly states that the attorney fees are "penalties." Rule 1.442(g) expressly states that the fees are "sanctions," and this Court has recognized that the fees are "sanctions" as set forth by the majority in the detailed history of the statute and rule. Moreover, the statute clearly authorizes attorney fees for only those fees incurred after the date the offer was served upon the rejecting party, not from the date the offering party's counsel agreed to undertake the representation. § 768.79(6)(a), (b), Fla. Stat. This Court made the specific point in Leapai v. Milton, 595 So.2d 12 (Fla.1992), that the right to recover attorney fees does not attach the to the cause of action but to the unreasonable rejection of an offer of settlement. Id. at 15.
(3) The reason that the statute and rule are to be strictly construed is not because either is ambiguous but because the statute authorizes and the rule implements an award of attorney fees and because the assessment of attorney fees pursuant to the statute and rule is a sanction. It is the long-standing precedent of this Court that statutes and rules authorizing attorney fees or imposing penalties are to be strictly construed as written and not extended by implication. Since neither the statute nor the rule authorizes a fee multiplier, an authorization for the use of a multiplier would have to be by implication in violation of both long-standing and very recent precedent of this Court. See majority op. at 223.
(4) In delineating the criteria for a trial judge to use in determining the amount of attorney fees, the statute and rule set forth criteria that focus exclusively upon issues concerning the evaluation and rejection of the offer of judgment. Thus, the reasonable construction of the phrase "along with all other relevant criteria" in the introductory part of rule 1.442(h)(2) is that the other relevant criteria are similar considerations related to the evaluation and rejection of the offer of judgment. It is an unreasonable construction to read into the statute and rule an authorization for a fee multiplier as an inducement to obtaining counsel to undertake the representation in the first place. Again, the statute only authorizes fees "incurred from the date the offer was served." § 768.79(6)(a), (b), Fla. Stat.
(5) As stated above in paragraph (1), in cases in which the offer-of-judgment statute and rule apply, counsel has already agreed by contract to represent the client before the offer of judgment is made. In this case, counsel agreed to this representation before any offer of judgment was made on the basis of a thirty-three and *225 one-third percent contingency fee, meaning that counsel agreed to accept a fee of thirty-three and one-third percent of the amount received by settlement or judgment. Counsel made an offer of judgment of $10,000, which, if accepted, would have resulted in a fee of approximately $3333 according to counsel's contract. The offer was of course not accepted and, after trial, a net judgment of $87,700 was entered. According to counsel's contract with his client, he was entitled to a fee of approximately $29,230.41 for the representation from the inception of the representation, which was the date of the contract through the entry of the final judgment. Because of the rejection of the offer of judgment, the court was authorized to consider the number of hours counsel reasonably expended on the case and the reasonable hourly rate of counsel of like competence and skill "incurred from the date of the offer." According to the trial court, these two considerations produced a fee of $58,450.[15] To further enhance this amount by the use of a multiplier so that the fee becomes $87,675 is not a sanction authorized by the statute. Rather, the trial court must use the criteria expressly provided in rule 1.442 and any other relevant criteria related to evaluating the offer of judgment to adjust the $58,450 so as to determine a reasonable fee.
BELL, J., concurs.
PARIENTE, J., dissenting.
I respectfully dissent. In my view, the contingent nature of the representation is an appropriate consideration in an award of attorney's fees under the offer of judgment statute, section 768.79, Florida Statutes (2002). A contingent fee arrangement comes within the plain language of "all relevant criteria" in section 768.79(7)(b), and is not contrary to the underlying policy of the statute, which is to promote settlements.
Section 768.79(7)(b) of the offer of judgment statute provides that a trial court shall consider six "additional" factors and "all other relevant criteria " in determining the reasonableness of an award of attorney's fees to a party whose recovery exceeds a rejected offer of judgment by at least twenty-five percent. The majority in this case interprets this statutory language as authorizing consideration of only those criteria that serve the statute's purpose of promoting settlements and discouraging unnecessary litigation, and concludes that allowing the trial judge to consider the contingent nature of the representation contravenes this purpose.
I disagree. Whenever a trial court bases a fee award in part on the multiplier, its determination must take into account the necessary factual predicates set forth in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla.1990), and Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985), i.e., that the attorney representing the party who made the offer of judgment would not have taken the case, nor would any other competent attorney in that legal community, without the availability of the multiplier. Thus circumscribed, the use of the contingency risk factor, in tandem with the six statutory criteria and other relevant considerations, serves the goals of both ensuring access to the courts by potential litigants and encouraging settlement of claims.
The prospect of a fee award under the offer of judgment statute can be a significant *226 consideration in an attorney's decision to undertake representation of certain individuals with prospective claims, especially when the total amount of the potential claim is small as compared to the number of hours that will be expended if the case goes to trial. Thus, the fact that counsel has already been obtained, relied on in the majority and concurring opinions, should not preclude the trial court from finding that the prospect of a multiplier was a substantial reason why counsel agreed to undertake representation.
In addition, the adverse party's knowledge that the representation is contingent and the prospect of an enhanced fee award would be additional factors in promoting settlement. The defendant in a contingent fee case knows that no matter how many hours the plaintiff's attorney works, the recovery of a fee is contingent on whether the plaintiff prevails. Thus, in many circumstances, there is little incentive for a defendant to settle early on. Once the plaintiff makes an offer of judgment, the defendant must assess the likelihood that the verdict will be twenty-five percent less than the offer of judgment and what the liability for attorney's fees will be. The knowledge that the attorney's fees awarded will include the possibility of an enhanced fee due to the contingent nature of the representation is a factor for the adverse party to consider in assessing whether to settle the case in a timely fashion.
The Fourth District has recognized that in the context of the offer of judgment statute, the prospect that an award of fees will include a contingency risk multiplier may be a significant consideration in an attorney's initial decision to represent a client on a contingency fee basis:
[W]e find no logical inconsistency in application of the Quanstrom factual requirements in the offer of judgment context. We recognize whenever a potential client walks through an attorney's door for the first time, a wide array of factors enter the calculus as to whether or not counsel will in fact decide to undertake that representation. Rowe and Quanstrom recognized potential clients whose cases seem to have a relatively low likelihood of success at the outset, may face considerable difficulties in securing counsel, and may often be unable to afford competent counsel. As such, the multiplier was established, to serve as an incentive of sorts, for attorneys to undertake representation where a risk of nonpayment was established. Although an attorney contemplating representation of a particular client can never know for certain whether or not entitlement to a fee award under 768.79 will ultimately be established, surely skilled counsel can ... anticipate such. Offers of judgment, as well as requests to apply multipliers, have clearly become part and parcel of litigation in the state of Florida; this court need only look at any monthly docket to recognize such. We find no inconsistency in holding competent counsel can "anticipate" the eventual filing of a 768.79 offer of judgment, "anticipate" the possible entitlement to fees if the statutory prerequisites are met, and "anticipate" the possibility said fee award will be multiplied. Accordingly, we find no logical inconsistency in application of the Quanstrom requirements to the offer of judgment context.

Island Hoppers, Ltd. v. Keith, 820 So.2d 967, 975 (Fla. 4th DCA 2002) (footnote and quotation marks omitted) (emphasis supplied).
I agree with this assessment of the practical realities of the role that the multiplier plays in the initial decision to undertake *227 representation in a case. These realities are illustrated by the record in this case.
In July 1998, plaintiff Sarkis made a reasonable offer of $10,000, which was not accepted. The ultimate net judgment for Sarkis was $87,700, following a verdict in her favor in February 2000.[16] The trial court found a reasonable hourly rate to be $350 per hour. The trial court further found that
Defendant, Allstate Insurance Company, as a practice on a national level as well as more particularly in Brevard County, vigorously defends claims of the nature brought by the Plaintiff in this case. Plaintiff presented ample testimony in the record that there is a strong likelihood that any claim against Defendant, Allstate Insurance Company will require a trial.
In applying a multiplier of 1.5, the trial court awarded fees corresponding to an hourly rate of $525. Additionally, as the Fifth District itself noted:
Sarkis made a strong showing to support the award of a multiplier. One of her attorney expert witnesses testified that the possibility of obtaining a multiplier fee award in this case was "absolutely something that any competent attorney would be taking into consideration and expect." In accepting this case, he said, an attorney would have to consider the need to recover more than $35,000 because of the PIP, medical payments and tortfeasor setoffs, and the attorney would have to prove permanent injury for a plaintiff with a history of prior accidents and pre-existing conditionsnot a promising case from the outset. Further, because the case involved Allstate as the insurer/defendant and it has a firm policy to not settle cases, this case would likely go to trial, with the attorney having to finance costs. There was no way to mitigate the risk of nonpayment in any way.
Sarkis' attorney testified:
[I]t is very tough to find competent counsel unless that counsel has an understanding that if we succeed at tilting the windmill [Allstate] and doing that successfully that there will be a reward at taking the risk on a contingency fee.
Allstate Ins. Co. v. Sarkis, 809 So.2d 6, 7-8 (Fla. 5th DCA 2001). In my view, the fee awarded was consistent with the offer of judgment statute.[17]
Paragraphs (6)(a) and (b) of section 768.79 both state that in awarding attorney's fees, the trial court should calculate the fee award in accordance with the guidelines promulgated by the Supreme Court. As the Fourth District explained in Collins v. Wilkins, 664 So.2d 14, 15 (Fla. 4th DCA 1995), the guidelines that should be considered in determining a reasonable fee are the factors contained in Rule Regulating the Florida Bar 4-1.5. These factors specifically include whether or not the fee is fixed or contingent. See R. Regulating Fla. Bar 4-1.5(b)(8). The rule also specifies that all factors should be considered, "and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors." R. Regulating Fla. Bar 4-1.5(c).
*228 In Bell v. U.S.B. Acquisition Co., 734 So.2d 403 (Fla.1999), we rejected an argument that the contingent nature of the representation should not be considered in awarding reasonable attorney's fees under a contractual prevailing party provision. We specifically referred to the criteria in rule 4-1.5 in holding that a contingency fee multiplier may be applied to court-awarded attorney's fees that are authorized by a contractual provision rather than a statute. Significantly, we stated:
Even if we were to dispense with utilizing a multiplier in a contract case, one of the factors set forth in rule 4-1.5(b) ... is whether the fee is fixed or contingent. Thus, even without a multiplier, the court would be authorized to award a greater fee based on the contingent nature of the fee agreement, or reduce a fee award where there was no risk of nonpayment. In fact, an upward adjustment of a fee under these circumstances would be analogous to a court's application of a multiplier.
Id. at 411.
Further, the Court has adopted a forced, rather than a strict, construction of an unambiguous statute in rejecting the contingent nature of the representation as one of the "relevant criteria" in determining the reasonableness of a fee award under section 768.79(7)(b). Strict construction in favor of a party receiving a sanction is required only when the statutory language being construed is ambiguous. When there is no ambiguity, there is no need to resort to principles of statutory construction. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) ("[W]hen the language of the statute is clear and unambiguous ... there is no occasion for resorting to rules of statutory interpretation and construction...."). In that instance, "strict" construction is the same as simply applying a statute as it is written.
This commonsense observation is reflected in one of the cases cited by the majority to show that statutes imposing fees as a sanction must be strictly construed. In Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276 (Fla.2003), this Court held that "under the plain language " of rule 1.442(c)(3), which provides that a joint proposal for settlement "shall state the amount and terms attributable to each party," "an offer from multiple plaintiffs must apportion the offer among the plaintiffs." Id. at 279 (emphasis supplied). As in Willis Shaw Express, there is no ambiguity in the language of section 768.79(7)(b) that requires a construction different from simply applying the plain language of the statute.
The majority also cites to Gershuny v. Martin McFall Messenger Anesthesia Professional Ass'n, 539 So.2d 1131, 1132 (Fla.1989), for the proposition that statutory authorization for attorney's fees is to be strictly construed. In Gershuny, this Court relied in part on its decision in Finkelstein v. North Broward Hospital District, 484 So.2d 1241 (Fla.1986), which applied the principles of strict construction and the implied exclusion of one thing by the mention of another to hold that a nurse could not recover under a fee-shifting statute that authorized an award to the prevailing party in a malpractice action against any physician, podiatrist, hospital, or health maintenance organization. Unlike the list of specific entities in the statute discussed in Finkelstein, the inclusion of "all other relevant criteria" in section 768.79(7)(b) does not imply the exclusion of a contingency fee multiplier.
Although the term "all other relevant criteria" is intentionally open-ended and nonspecific, it is not ambiguous in the sense of being susceptible to two opposing constructions. Cf. State v. Jefferson, 758 So.2d 661, 663 (Fla.2000) (finding ambiguity in a provision that appeared to create *229 both a jurisdictional and procedural bar to raising unpreserved, nonfundamental errors in direct criminal appeals). One need not resort to implication in order to construe "all other relevant criteria" to include the contingency fee multiplier. As the Second District held in Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275 (Fla. 2nd DCA 2000), review dismissed, 777 So.2d 973 (Fla.2001), in agreeing with the Fourth District's opinion in Collins:
Section 768.79(7)(b) directs the trial court to consider, in determining the reasonableness of the fee, certain enumerated factors "along with all other relevant criteria" (emphasis ours). The statute also refers the trial court to the guidelines promulgated by the supreme court. See § 768.79(6)(a), (b). These guidelines include the Rules Regulating the Florida Bar, one of which, rule 4-1.5, fees for legal services, refers to whether or not the fee is fixed or contingent. See R. Regulating Fla. Bar 4-1.5(b)(8). Additionally, in setting a reasonable fee, rule 4-1.5(c) provides that all factors in this rule should be considered, "and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors." Thus, it is clear that the legislature authorized trial courts to consider and apply a contingency risk multiplier when awarding an attorneys' fee under section 768.79. See also Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 831 (Fla.1990). Inasmuch as the procedure is clearly outlined in the statute, we decline to construe it in a manner inconsistent with its directive, despite the fact that it enhances the award in such a generous manner. The trial court properly applied the statute as written.
Id. at 1276 (second emphasis supplied).
In contrast, we have restricted the use of the contingent risk multiplier only when the fee statute has specifically stated that only the enumerated factors shall be considered. See, e.g., Schick v. Dep't of Agric. & Consumer Servs., 599 So.2d 641, 644 (Fla.1992) (construing section 73.907, Florida Statutes (1987), which lists the factors to be considered in awarding fees for eminent domain proceedings). Therefore, in my view, the majority's act of excluding a contingency risk multiplier from consideration as a relevant criterion is an unwarranted exercise in statutory construction.
Nor can I find a foundation for the Court's exclusion of a contingency risk multiplier in the history of the offer of judgment statute. Although the Court has detailed the lengthy history of the offer of judgment statute, it is noteworthy that the term "all other relevant criteria" has been part of section 768.79 since its enactment in 1986. See ch. 86-160, § 58, Laws of Fla. In 1985, this Court, in holding the fee-shifting provisions of a different statute constitutional, first authorized a contingency risk multiplier for fee awards to prevailing parties. See Rowe, 472 So.2d at 1151. When the Legislature enacted the offer of judgment statute during its next regular session after Rowe, it did not specifically exclude an attorney's contingency risk from the consideration of "all relevant criteria" in determining a reasonable attorney's fee award. Instead, it granted trial courts broad discretion to consider "all other relevant criteria" in addition to the six factors specifically enumerated. This language remained intact through a substantial revision of section 768.79 in 1990. See ch. 90-119, § 48, Laws of Fla.
Further, the Legislature has not abrogated Collins, the first appellate decision applying the multiplier to section 768.79. Cf. City of Hollywood v. Lombardi, 770 So.2d 1196, 1202 (Fla.2000) (stating that *230 the Legislature is presumed to know and to have adopted prior judicial constructions of a law when enacting a new version of that law unless a contrary intention is expressed in the new version). In Collins, the Fourth District expressly concluded "that the legislature authorized a trial court to consider the application of a contingency risk factor as one criterion which may be applied in determining a reasonable fee under section 768.79." 664 So.2d at 15.
As we stated in Bell in discussing the many public policy considerations behind statutorily authorized attorney's fees:
It is true that one of the purposes of certain statutory attorney's fees provisions is to obtain public enforcement of legislative acts through private lawsuits. See Quanstrom, 555 So.2d at 833. However, as we made clear in Quanstrom, public policy enforcement cases are treated differently from other court-awarded fee cases. In public policy enforcement cases, the contingency fee agreement is only one of many factors to consider in awarding a reasonable attorney's fee, and the fee is not capped by the fee agreement between attorney and client. See id. at 833-34.
There are many other types of statutes that authorize attorney's fees but are not considered public policy enforcement cases as contemplated by Quanstrom. While some attorney's fees statutes may have a broader policy purpose, see, e.g., § 627.428, Fla. Stat. (1997) (attorney's fees against insurer), many involve only private disputes between parties. See, e.g., § 506.16, Fla. Stat. (1997) (awarding reasonable attorney's fees in actions to recover milk bottles); 713.29, Fla. Stat. (1997) (attorney's fees for enforcement of a lien). Nevertheless, consideration of a multiplier is authorized by Rowe and Quanstrom in these cases.
....
We perceive no policy concern that would prevent a court's consideration of a contingency multiplier when the parties to a contract agree to have the court award reasonable attorney's fees. Instead, we find that the primary policy that favors the consideration of the multiplier is that it assists parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation. While a prevailing party's attorney's fee provision in a contract may be a powerful sword in the hands of those who can afford an attorney, a party who would be faced with substantial difficulties in obtaining an attorney without a contingency arrangement ought to be able to claim a multiplier in the appropriate case, if the evidence justifies it.
734 So.2d at 410-11 (footnotes omitted).
In sum, I conclude that allowing the trial court to consider the contingent nature of the representation in calculating an award of a reasonable attorney's fees award is consistent with the language of the offer of judgment statute and not inconsistent with its underlying policy of promoting settlements. Accordingly, I dissent.
NOTES
[1] In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985), modified by Quanstrom, this Court established the criteria that must be proven for a contingency risk multiplier to be applied. For a trial court to apply a contingency risk multiplier in tort and contract cases, the party seeking use of a multiplier must present evidence of the following factors: (1) whether the relevant market requires a contingency risk multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially the amount obtained, and the type of fee arrangement between the attorney and his client. Quanstrom, 555 So.2d at 834; see also Rowe, 472 So.2d at 1150-52.
[2] This figure was ultimately reduced by twenty-five percent to take into account the other criteria in section 768.79(7)(b), resulting in a total fee award of $777,695.95.
[3] We interpret the reference to a "clean slate" to mean that if the panel was not bound by the majority's decision in Pirelli Armstrong Tire.
[4] The First District's decision followed the decision by this Court to strike the multiplier in the award of appellate attorney fees. Carter v. Brown & Williamson Tobacco Corp., No. SC94797 (Fla. order filed Dec. 13, 2002).
[5] In this original rule, costs were the only sanction. There was no authorization in this rule for attorney fees as a sanction. This rule was changed immaterially for present purposes in 1980. The Florida Bar, 391 So.2d 165 (Fla. 1980).
[6] Section 45.061 was a similar offer-of-judgment statute, which was repealed with respect to actions accruing after October 1, 1990. Ch. 90-119, § 22, Laws of Fla. Section 768.79 was therefore left as the only statute applicable to actions accruing after that date.
[7] In pertinent part, the new rule stated:

(h) Sanctions.
(1) Upon motion made within 30 days after the return of the verdict in a jury action or the date of filing of the judgment in a non-jury action, the court may impose sanctions equal to reasonable attorneys fees and all reasonable costs of the litigation accruing from the date the relevant offer of judgment was made whenever the court finds both of the following:
(A) that the party against whom sanctions are sought has unreasonably rejected or refused the offer, resulting in unreasonable delay and needless increase in the cost of litigation; and
(B) that either
(I) an offer to pay was refused and the damages awarded in favor of the offeree and against the offeror are less than 75 percent of the offer; or
(ii) an offer to accept payment was refused and the damages awarded in favor of the offeror and against the offeree are more than 125 percent of the offer.
(2) In determining entitlement to and the amount of a sanction, the court may consider any relevant factor, including:
(A) the merit of the claim that was the subject of the offer;
(B) the number, nature and quality of offers and counteroffers made by the parties;
(C) the closeness of questions of fact and law at issue;
(D) whether a party unreasonably refused to furnish information necessary to evaluate the reasonableness of an offer;
(E) whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties;
(F) the fact that, at the time the offer was made and rejected, it was unlikely that the rejection would result in unreasonable cost or delay;
(G) the fact that a party seeking sanctions has himself unreasonably rejected an offer or counteroffer on the same issues or engaged in other unreasonable conduct;
(H) the fact that the proceeding in question essentially was equitable in nature;
(I) the lack of good faith underlying the offer; or
(J) the fact that the judgment was grossly disproportionate to the offer.
(3) No sanction under this rule shall be imposed in any class action or shareholder derivative suit, nor in any proceeding involving dissolution of marriage, alimony, nonsupport, child custody or eminent domain.
(Footnotes omitted.)
[8] See supra note 6.
[9] Ch. 90-119, § 48, Laws of Fla.
[10] This case was decided under section 768.79 as it existed prior to its 1990 amendments, and under rule 1.442 as it existed in 1990, prior to this Court's repeal of the rule in Timmons.
[11] TGI Friday's was decided under the 1987 version of section 768.79. The statute was amended in 1990, wherein the factors of subsection (2)(b) in the 1987 version (incorporated into rule 1.442) were moved to subsection (7)(b) of the amended statute. See ch. 90-119, § 48, Laws of Fla. The substance of the subsection remained the same.
[12] The Committee recommended that rule 1.442(h)(2) provide guidelines for determining the "entitlement to and the reasonableness of" the amount of an award of attorney fees. This Court rejected including the words "the entitlement to" because use of those words would infringe upon the Legislature's exclusive authority to enact substantive law. The Committee also recommended adding whether the proposal was reasonably rejected to the factors to be considered in respect to the award of attorney fees. This Court rejected that recommendation, reasoning that such a consideration was inconsistent with this Court's opinion in TGI Friday's, in which this Court noted that the Legislature, by enacting section 768.79, did not give judges the discretion to determine whether it is reasonable to reject an offer of judgment. This consideration would therefore also impinge upon the Legislature's prerogative to enact substantive law. In re Amendments to Fla. Rules of Civ. Proc., 682 So.2d at 105-06.
[13] The factors are as follows:

(h) Costs and Fees.
(1) If a party is entitled to costs and fees pursuant to applicable Florida law, the court may, in its discretion, determine that a proposal was not made in good faith. In such case, the court may disallow an award of costs and attorneys' fees.
(2) When determining the reasonableness of the amount of an award of attorneys' fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following factors:
(A) The then-apparent merit or lack of merit in the claim. (B) The number and nature of proposals made by the parties.
(C) The closeness of questions of fact and law at issue.
(D) Whether the party making the proposal had unreasonably refused to furnish information necessary to evaluate the reasonableness of the proposal.
(E) Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.
(F) The amount of the additional delay cost and expense that the party making the proposal reasonably would be expected to incur if the litigation were to be prolonged.
[14] In determining attorney fee awards pursuant to rule 1.442, trial courts should make specific findings with respect to the factors provided in rule 1.442(h)(2).
[15] It is unclear whether the trial court calculated the hours from the inception of the representation or from the date of the offer of judgment. The statute only authorized the fees from the date the offer of judgment was made.
[16] The first trial resulted in a mistrial in October 1998, through no fault of the parties.
[17] Although, as Justice Wells points out, an award under section 768.79 applies only to fees incurred from the date the offer was served, this limitation does not preclude the trial court from considering, in determining whether to apply a multiplier to those fees, the circumstances that led counsel to agree to represent the plaintiff.